IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73947-6-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| MARC DANIEL MCKEE, | ) | |
| | ) | |
| Appellant. | ) | FILED: March 26, 2018 |

SCHINDLER, J. — An individual has a constitutional right of privacy to the contents of a cell phone. The Fourth Amendment to the United States Constitution protects privacy interests against an unreasonable search and seizure by requiring that a search warrant describe with particularity "the place to be searched" and the "things to be seized." Marc Daniel McKee contends the warrant to search his cell phone violated the particularity requirement. The warrant contained broad descriptions of cell phone data the police were allowed to search and seize, including "[i]mages, video, documents, text messages, contacts, audio recordings, call logs, calendars, notes, [and] tasks"; and authorized a "physical dump" of "the memory of the phone for examination." Because the warrant violated the particularity requirement of the Fourth Amendment, the search was unconstitutional. We reverse and remand to dismiss the convictions for four counts of possession of depictions of a minor engaged in sexually explicit conduct.

Criminal Investigation

In 2012, A.Z. lived with her older brother Robert Gora and her mother Brenda Brickley in Anacortes. Brickley was addicted to methamphetamine. Gora and 16-year-old A.Z. were addicted to heroin and methamphetamine. A.Z. was using heroin and methamphetamine on a daily basis during 2012.

In January 2012, Brickley introduced A.Z. to 40-year-old Marc Daniel McKee during a "drug deal" for methamphetamine. McKee started spending a lot of time with Brickley, Gora, and A.Z. and supplied them with methamphetamine. They would often "get high" together. At the end of June, McKee left to go to Alaska for work.

When McKee returned two months later, he immediately contacted A.Z. McKee told A.Z. he had heroin and methamphetamine. McKee and A.Z. spent three days together at a Burlington motel using the drugs and engaging in consensual sex.

A.Z. and McKee spent three days together again in early September. They used heroin and methamphetamine. McKee and A.Z. used McKee's cell phone to take photographs and record three video clips of themselves engaging in sex.

In October 2012, 15-year-old J.P. called A.Z. to get drugs. J.P. and her friend M.G. had run out of drugs and were going through withdrawal. A.Z. suggested J.P. contact McKee. J.P. sent McKee a text message. J.P. said she did not have any money. J.P. told McKee she was 16-years-old and would have sex with McKee in exchange for heroin. McKee went to the address J.P. gave him to deliver the heroin. J.P. and 16-year-old M.G. went into the bathroom to use the heroin and get high. After M.G. left, McKee and J.P. engaged in sex.

Brickley suspected A.Z. was having sex with McKee and confronted her. A.Z. denied having sex with McKee. On October 28, A.Z. and Brickley argued. A.Z. sent McKee a text message asking him to pick her up in five minutes. A.Z. said she "wanted to get high" and "wanted to shoot up . . . so please have drugs ready." A.Z. told Brickley she was going to a neighbor's house across the street "to get away and cool off." McKee picked up A.Z. and they drove to a house in Mount Vernon where he was staying.

Gora's girlfriend told Brickley she saw McKee pick up A.Z. in a truck. Brickley was furious. Brickley, longtime father figure Christopher Seifert, and Gora drove to the house in Mount Vernon. When McKee opened the front door, Seifert and Gora beat McKee and took his cell phone. They retrieved A.Z. and left.

Gora accessed McKee's cell phone and found the video clips of A.Z. and McKee having sex and the nude photographs of A.Z. Gora gave Brickley the cell phone.

After Brickley looked at the video clips and photographs on the cell phone, she contacted the Mount Vernon Police Department. On October 30, Brickley met with Detective Dave Shackleton. Brickley described the video clips and photographs she saw on the cell phone. Brickley left the cell phone with Detective Shackleton. Brickley later contacted Detective Shackleton to report that J.P. told her that McKee gave J.P. drugs in exchange for sex. Brickley obtained a restraining order prohibiting McKee from contacting A.Z.

Application for a Search Warrant

On October 31, Detective Jerrad Ely submitted an application and affidavit (Affidavit) in support of probable cause to obtain a warrant to search McKee's cell

phone to investigate the crimes of "Sexual Exploitation of a Minor RCW 9.68A.040" and

"Dealing in depictions of minor engaged in sexually explicit conduct RCW 9.68A.050."

The Affidavit states, in pertinent part:

> On 10/29/12 Officer Reed investigated a pornography call that was reported by Brenda Brickley to the Mount Vernon Police Department. BRICKLEY told REED that her 16 year old daughter A.M.Z. DOB 11/15/95 has been hanging out with a 41 year old man named Marc McKee at 1127 S 15th Street in Mount Vernon and she had not returned home. BRICKLEY said that she and her ex-husband, Christopher Seifert went to that residence on 10/28/12 to take A.M.Z. home. BRICKLEY said that they knocked on the door and pounded on the windows before MCKEE came to the door. BRICKLEY said that she was so upset that she "beat him up" and during this physical altercation MCKEE's cell phone fell from his pocket. BRICKLEY said that she then took that cell phone . . . while SEIFERT physically removed A.M.Z. from MCKEE's bedroom. BRICKLEY said that they then left with the phone.
>
> . . . .
>
> BRICKLEY said that on the morning of 10/29/12 she looked at the phone taken from MCKEE and found many pictures of her daughter completely naked in what she believes is MCKEE's room at 1127 S 15th Street. BRICKLEY described one picture where A.M.Z. is without clothing and tied up on the bed. She said that she found other pictures of young looking girls in various stages of undress. BRICKLEY said that she also viewed videos on the phone and believed some of them depicted MCKEE having sex with A.M.Z. . . .
>
> . . . .
>
> . . . BRICKLEY further described a phone call she got from J.N.P. who said she had sex and oral sex with MCKEE at Steven EVERSALL's residence in Anacortes on the corner of 6th and Oak in exchange for heroin. She also said that she believed that 15 year old J.W. was possibly involved with him. BRICKLEY provided Detective Shackleton with MCKEE's cell phone described as a[n] LG with model number VX9100.
>
> . . . .
>
> **I am requesting to search:**
> The cell phone described as a[n] LG cell phone with model VX9100 currently being held at the Mount Vernon Police Department.
> **For:**

Images, video, documents, text messages, contacts, audio recordings, call logs, calendars, notes, tasks, data/[I]nternet usage, any and all identifying data, and any other electronic data from the cell phone showing evidence of the above listed crimes. If compatible, the phone content will be copied from the phone using forensic hardware and software that retrieves basic identifier information about the phone and can forensically download images, video, text messages, contacts, audio recordings, and other additional data for the investigator to examine depending on support for that particular phone. It is also possible to conduct a physical dump on some supported phones obtaining all of the memory of the phone for examination. If the cell phone is not supported by any forensic tools, the phone will be examined manually.[1]

Search Warrant

On October 31, the court issued a search warrant. Based on the Affidavit of Detective Ely, the district court judge found probable cause to believe McKee committed or was committing the crimes of "Sexual Exploitation of a Minor RCW 9.68A.040" and "Dealing in depictions of minor engaged in sexually explicit conduct RCW 9.68A.050."

The search warrant states:

WHEREAS, Detective J. Ely has this day signed an affidavit on oath before the undersigned, David A. Svaren Judge, Skagit County District Court, that he believes that a crime has been or is being committed:

To wit (Type of Crime)
Sexual Exploitation of a Minor RCW 9.68A.040, Dealing in depictions of minor engaged in sexually explicit conduct RCW 9.68A.050.

The warrant allows the police to obtain evidence from "[t]he cell phone described as a[n] LG cell phone with model VX9100 currently being held at the Mount Vernon Police Department" for the following "Items Wanted":

Images, video, documents, text messages, contacts, audio recordings, call logs, calendars, notes, tasks, data/[I]nternet usage, any and all identifying data, and any other electronic data from the cell phone showing evidence of the above listed crimes.[2]

---

[1] Boldface in original.

[2] Boldface omitted.

The search warrant authorizes the police to conduct a "physical dump" of the memory of the cell phone for examination.

> If compatible, the phone content will be copied from the phone using forensic hardware and software that retrieves basic identifier information about the phone and can forensically download images, video, text messages, contacts, audio recordings, and other additional data for the Investigator to examine depending on support for that particular phone. It is also possible to conduct a physical dump on some supported phones obtaining all of the memory of the phone for examination. If the cell phone is not supported by any forensic tools, the phone will be examined manually.

On November 7, 2012, the court filed a "Receipt of Execution of Search Warrant." The Receipt of Execution of Search Warrant states the police conducted a "Cellebrite Dump" of the cell phone on November 6. Cellebrite software obtains all information saved on the cell phone as well as deleted information and transfers the data from the cell phone to a computer.

Criminal Charges

The State charged McKee with three counts of possession of depictions of minors engaged in sexually explicit conduct in the first degree in violation of RCW 9.68A.070(1) based on the three cell phone video clips, one count of possession of depictions of a minor engaged in sexually explicit conduct of A.Z. in the second degree in violation of RCW 9.68A.070(2) based on the cell phone photographs, one count of commercial sex abuse of J.P. as a minor in violation of RCW 9.68A.100, three counts of distribution of methamphetamine and/or heroin to a person under age 18 in violation of RCW 69.50.406(1) and .401(2), and one count of violation of a no-contact order in violation of RCW 26.50.110(1).

## Motion to Suppress

McKee filed a motion to suppress the evidence the police seized from his cell phone. McKee asserted the search warrant violated the Fourth Amendment requirement to describe with particularity the "things to be seized." McKee argued the warrant allowed the police to search an "overbroad list of items" unrelated to the identified crimes under investigation. McKee also argued probable cause did not support issuing a search warrant of the cell phone for the crime of dealing in depictions of a minor engaged in sexually explicit conduct.

The court entered an order denying the motion to suppress.[3] The court found the allegations in the Affidavit support probable cause that McKee committed the crimes of sexual exploitation of a minor and dealing in depictions of minors engaged in sexually explicit conduct. The court concluded the citation to the criminal statutes established particularity and the search warrant was not overbroad. The order states:

> [T]he information came to law enforcement from a known citizen informant who had actually viewed the materials sought on the cell phone. She had observed naked minors, sexual activity, and the [defendant]. There was [probable cause] to investigate the phone to ascertain whether the images had been distributed. It was very clear that some identifiable criminal activity would be found on the phone. The statutes were referenced with particularity. The [search warrant] is not overbroad.

The jury found McKee not guilty of distribution of methamphetamine and/or heroin to M.G. The jury found McKee guilty as charged on all other counts.

## Fourth Amendment

McKee asserts because the search warrant violates the Fourth Amendment, he is entitled to dismissal of the four convictions of possession of depictions of a minor engaged in sexually explicit conduct.

---

[3] The court did not enter CrR 3.6 findings of fact and conclusions of law.

7

The Fourth Amendment protects privacy interests against an unreasonable search and seizure.

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon <u>probable cause</u>, supported <u>by oath</u> or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.[4]

The Fourth Amendment was adopted in response to "indiscriminate searches and seizures conducted under the authority of 'general warrants.' " <u>Payton v. New York</u>, 445 U.S. 573, 583, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980) (quoting <u>Boyd v. United States</u>, 116 U.S. 616, 625, 6 S. Ct. 524, 29 L. Ed. 746 (1886)). The "specific evil" was the " 'general warrant' abhorred by the colonists." <u>Coolidge v. New Hampshire</u>, 403 U.S. 443, 467, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971) (citing <u>Boyd</u>, 116 U.S. at 624-30); <u>State v. Perrone</u>, 119 Wn.2d 538, 545, 834 P.2d 611 (1992). " '[T]he problem [posed by the general warrant] is not that of intrusion per se, but of a general, exploratory rummaging in a person's belongings. . . . [The Fourth Amendment addresses the problem] by requiring a "particular description" of the things to be seized.' " <u>Andresen v. Maryland</u>, 427 U.S. 463, 480, 96 S. Ct. 2737, 49 L.Ed.2d 627 (1976)[5] (quoting <u>Coolidge</u>, 403 U.S. at 467).

> [T]he Fourth Amendment categorically prohibits the issuance of any warrant except one "particularly describing the place to be searched and the persons or things to be seized." The manifest purpose of this particularity requirement was to prevent general searches. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be

---

[4] (Emphasis added.) Article I, section 7 of the state constitution prohibits government intrusion upon "private affairs . . . without authority of law."

[5] (Italics omitted) (alterations in original).

carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit.

Maryland v. Garrison, 480 U.S. 79, 84, 107 S. Ct. 1013, 94 L. Ed. 2d 72 (1987).

The Fourth Amendment, as applied to the states through the Fourteenth Amendment, imposes two express requirements on the government. Kentucky v. King, 563 U.S. 452, 459, 131 S. Ct. 1849, 179 L. Ed. 2d 865 (2011). "First, all searches and seizures must be reasonable. Second, a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity." Kentucky, 563 U.S. at 459; see also State v. Besola, 184 Wn.2d 605, 359 P.3d 799 (2015).

The warrant in this case was based on probable cause and supported by a sworn Affidavit.[6] McKee contends the warrant to search his cell phone is overbroad and violates the particularity requirement of the Fourth Amendment.

The purpose of the requirement to describe particularly "the place to be searched" and the "things to be seized" is to make a general search "impossible and prevent[ ] the seizure of one thing under a warrant describing another." U.S. CONST. amend. IV; Marron v. United States, 275 U.S. 192, 196, 48 S. Ct. 74, 72 L. Ed. 231 (1927). The other purpose of the particularity requirement is to eliminate "the danger of unlimited discretion in the executing officer's determination of what to seize" and to prevent the issuance of a warrant "on loose, vague, or doubtful bases of fact." Perrone, 119 Wn.2d at 546 (citing United States v. Blakeney, 942 F.2d 1001, 1026 (6th Cir. 1991); State v. Gronlund, 356 N.W.2d 144, 146 (N.D. 1984)), 548.

---

[6] McKee concedes there was probable cause to support issuing a warrant for sexual exploitation of a minor but asserts nothing in the Affidavit supported probable cause for dealing in the depictions of a minor engaged in sexually explicit conduct.

The Fourth Amendment requires particularity "[a]s to what is to be taken, nothing is left to the discretion of the officer executing the warrant." Marron, 275 U.S. at 196. " 'The warrant must enable the searcher to reasonably ascertain and identify the things which are authorized to be seized.' " Perrone, 119 Wn.2d at 546 (quoting United States v. Cook, 657 F.2d 730, 733 (5th Cir. 1981)).

We review de novo whether the warrant authorizing the search and seizure of McKee's cell phone meets the particularity requirement of the Fourth Amendment. Perrone, 119 Wn.2d at 549; State v. Reep, 161 Wn.2d 808, 813, 167 P.3d 1156 (2007). To determine whether a warrant lacks specificity, we examine particularity and breadth. United States v. Kow, 58 F.3d 423, 426 (9th Cir. 1995).

> "Specificity has two aspects: particularity and breadth. Particularity is the requirement that the warrant must clearly state what is sought. Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based."

United States v. Towne, 997 F.2d 537, 544 (9th Cir. 1993) (quoting In re Grand Jury Subpoenas Dated Dec. 10, 1987, 926 F.2d 847, 856-57 (9th Cir. 1991)). We construe the language of the warrant in a "commonsense, practical manner, rather than in a hypertechnical sense." Perrone, 119 Wn.2d at 549.

The degree of specificity required varies depending on the circumstances of the case and the types of items. States v. Spilotro, 800 F.2d 959, 963 (9th Cir. 1986); Perrone, 119 Wn.2d at 546; State v. Stenson, 132 Wn.2d 668, 692, 940 P.2d 1239 (1997). The advent of devices such as cell phones that store vast amounts of personal information makes the particularity requirement of the Fourth Amendment that much more important.

10

In <u>Riley v. California</u>, ___ U.S. ___, 134 S. Ct. 2473, 189 L. Ed. 2d 430 (2014), the United States Supreme Court unambiguously held that a warrantless search of a cell phone violates the Fourth Amendment. The Supreme Court describes cell phones as "minicomputers" that collect in one place many distinct types of private information. <u>Riley</u>, 134 S. Ct. at 2489. "The term 'cell phone' is itself misleading shorthand; many of these devices are in fact minicomputers that also happen to have the capacity to be used as a telephone." <u>Riley</u>, 134 S. Ct. at 2489. "Modern cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold for many Americans 'the privacies of life.' " <u>Riley</u>, 134 S. Ct. at 2494-95 (quoting <u>Boyd</u>, 116 U.S. at 630). The Court recognizes that the scope of the search of a cell phone "would typically expose to the government far <u>more</u> than the most exhaustive search of a house." <u>Riley</u>, 134 S. Ct. at 2491.[7] In addition to the extraordinary amount of information accessible through a cell phone, the Court noted the types of information a cell phone might contain or be used to access. "A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form—unless the phone is." <u>Riley</u>, 134 S. Ct. at 2491.

In <u>State v. Samalia</u>, 186 Wn.2d 262, 269, 375 P.3d 1082 (2016), our Supreme Court held that "cell phones and the information contained therein are private affairs because they may contain intimate details about individuals' lives, which we have previously held are protected under article I, section 7" of the Washington Constitution.

> "[A]n intrusion upon the occupant's expectation of privacy in those premises should extend no further than is necessary to find particular

---

[7] Emphasis in original.

> objects, and this is reflected in the rule that the described premises may only be searched as long and as intensely as is reasonable to find the things described in the warrant."

Perrone, 119 Wn.2d at 545-46[8] (quoting 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 4.6(a), at 605 (4th ed. 2004)). A warrant that implicates materials protected by the First Amendment requires a heightened degree of particularity. Perrone, 119 Wn.2d at 547 (citing Stanford v. Texas, 379 U.S. 476, 483, 85 S. Ct. 506, 13 L. Ed. 2d 431 (1965)). The particularity requirement in such cases must be "accorded the most scrupulous exactitude." Stanford, 379 U.S. at 485.

McKee contends the warrant violates the particularity requirement of the Fourth Amendment by authorizing the police to search broad categories of data stored on the cell phone without limitation. The State claims the warrant meets the particularity requirement by limiting the search to the crimes that are cited on the first page of the warrant, "Sexual Exploitation of a Minor RCW 9.68A.040" and "Dealing in depictions of minor engaged in sexually explicit conduct RCW 9.68A.050," and to "evidence of said crime . . . located" on the "LG cell phone with model VX9100." We disagree with the State.

In Besola, the Washington Supreme Court held the citation to a statute did not "modify or limit the items listed in the warrant" that "contained broad descriptions of the items to be seized." Besola, 184 Wn.2d at 609-10. The warrant in Besola identified the crime of " 'Possession of Child Pornography R.C.W. 9.68A.070.' " Besola, 184 Wn.2d

---

[8] Alteration in original.

at 608. The search warrant authorized the police to seize and search broad categories of:

"1.  Any and all video tapes, CDs,[9] DVDs,[10] or any other visual and or audio recordings;

2.  Any and all printed pornographic materials;

3.  Any photographs, but particularly of minors;

4.  Any and all computer hard drives or laptop computers and any memory storage devices;

5.  Any and all documents demonstrating purchase, sale or transfer of pornographic material."

Besola, 184 Wn.2d at 608-09. The court rejected the argument that the citation to the statute modified or limited the list of items to be seized or provided guidance to the officers executing the search. Besola, 184 Wn.2d at 614-15. The court held, "[T]hese descriptions were overbroad because they allowed officers to seize lawfully possessed materials, such as adult pornography, when the descriptions could easily have been made more particular" by using the precise statutory language to describe the materials sought. Besola, 184 Wn.2d at 610, 613.

Here, as in Besola, the warrant cites and identifies the crimes under investigation but does not use the language in the statutes to describe the data sought from the cell phone. The warrant lists the crimes under investigation on page one but separately lists the "Items Wanted" on page two. As in Besola, the description of the "Items Wanted" is overbroad and allowed the police to search and seize lawful data when the warrant

---

[9] Compact discs.

[10] Digital versatile discs.

could have been made more particular.[11]

Next, the State claims that because detailed particularity was not possible, use of the general identification of the data to be searched is permissible. "[T]he use of a generic term or a general description is not per se a violation of the particularity requirement." Perrone, 119 Wn.2d at 547. Warrants that describe generic categories of items are not invalid "if a more precise description of the items subject to seizure is not possible" and "a more particular description of the items to be seized is not available at the time the warrant issues." Spilotro, 800 F.2d at 963; Perrone, 119 Wn.2d at 547.

---

[11] RCW 9.68A.040 provides, in pertinent part:

Sexual exploitation of a minor—Elements of crime—Penalty. (1) A person is guilty of sexual exploitation of a minor if the person:
　　(a) Compels a minor by threat or force to engage in sexually explicit conduct, knowing that such conduct will be photographed or part of a live performance;
　　(b) Aids, invites, employs, authorizes, or causes a minor to engage in sexually explicit conduct, knowing that such conduct will be photographed or part of a live performance.

(Boldface omitted.)

Former RCW 9.68A.050 (2010) provides, in pertinent part:

Dealing in depictions of minor engaged in sexually explicit conduct. (1)(a) A person commits the crime of dealing in depictions of a minor engaged in sexually explicit conduct in the first degree when he or she:
　　(i) Knowingly develops, duplicates, publishes, prints, disseminates, exchanges, finances, attempts to finance, or sells a visual or printed matter that depicts a minor engaged in an act of sexually explicit conduct as defined in RCW 9.68A.011(4) (a) through (e); or
　　(ii) Possesses with intent to develop, duplicate, publish, print, disseminate, exchange, or sell any visual or printed matter that depicts a minor engaged in an act of sexually explicit conduct as defined in RCW 9.68A.011(4) (a) through (e).
　　. . . .
　　(2)(a) A person commits the crime of dealing in depictions of a minor engaged in sexually explicit conduct in the second degree when he or she:
　　(i) Knowingly develops, duplicates, publishes, prints, disseminates, exchanges, finances, attempts to finance, or sells any visual or printed matter that depicts a minor engaged in an act of sexually explicit conduct as defined in RCW 9.68A.011(4) (f) or (g); or
　　(ii) Possesses with intent to develop, duplicate, publish, print, disseminate, exchange, or sell any visual or printed matter that depicts a minor engaged in an act of sexually explicit conduct as defined in RCW 9.68A.011(4) (f) or (g).

(Boldface omitted.) The legislature amended RCW 9.68A.050 in 2017 to make dealing in depictions of a minor engaged in sexually explicit conduct in the second degree a class B felony instead of a class C felony. LAWS OF 2017, ch. 126, § 3; RCW 9.68A.050(2)(b).

"[A] description is valid if it is as specific as the circumstances and the nature of the activity under investigation permit." Perrone, 119 Wn.2d at 547; Stenson, 132 Wn.2d at 692. We consider " 'whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued.' " United States v. Mann, 389 F.3d 869, 878 (9th Cir. 2004) (quoting Spilotro, 800 F.2d at 963). In other words, whether the warrant could have been more specific considering the information known to police officers at the time the warrant was issued. See Perrone, 119 Wn.2d at 553.

The detailed allegations in the Affidavit submitted in support of the search warrant could easily meet the particularity requirement. The Affidavit described the allegations related to the crimes under investigation, the video clips and photographs located on the phone, and the time frame. But "an affidavit may only cure an overbroad warrant where the affidavit and the search warrant are physically attached, and the warrant expressly refers to the affidavit and incorporates it with 'suitable words of reference.' " State v. Riley, 121 Wn.2d 22, 29, 846 P.2d 1365 (1993) (quoting Bloom v. State, 283 So.2d 134, 136 (Fla. Dist. Ct. App. 1973)); see also Groh v. Ramirez, 540 U.S. 551, 557-58, 124 S. Ct. 1284, 157 L. Ed. 2d 1068 (2004) (A court may construe a warrant with reference to a supporting application or affidavit only if the warrant attaches and incorporates the documents by reference.). Because the Affidavit was not attached or incorporated by reference, our determination of the particularity requirement is limited

to the warrant.[12]

We consider " 'whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not.' " Mann, 389 F.3d at 878 (quoting Spilotro, 800 F.2d at 963). A search warrant must be definite enough that the executing officer can identify the property sought with reasonable clarity and eliminate the chance that the executing officer will exceed the permissible scope of the search. Stenson, 132 Wn.2d at 691-92; Perrone, 119 Wn.2d at 546; see also State v. Keodara, 191 Wn. App. 305, 313, 364 P.3d 777 (2015).

The warrant in this case was not carefully tailored to the justification to search and was not limited to data for which there was probable cause. The warrant authorized the police to search all images, videos, documents, calendars, text messages, data, Internet usage, and "any other electronic data" and to conduct a "physical dump" of "all of the memory of the phone for examination." The language of the search warrant clearly allows search and seizure of data without regard to whether the data is connected to the crime. The warrant gives the police the right to search the contents of the cell phone and seize private information with no temporal or other limitation. As in Keodara, "[t]here was no limit on the topics of information for which the police could search. Nor did the warrant limit the search to information generated close in time to incidents for which the police had probable cause." Keodara, 191 Wn. App. at 316.

---

[12] The State cites a number of cases to argue a generic description of the data to be seized meets the particularity requirement. See United States v. Schesso, 730 F.3d 1040 (9th Cir. 2013); United States v. Triplett, 684 F.3d 500 (5th Cir. 2012); United States v. Richards, 659 F.3d 527 (6th Cir. 2011); United States v. Burgess, 576 F.3d 1078 (10th Cir. 2009). But in all of these cases, the warrant attaches and incorporates the affidavit. At oral argument, the State conceded the Affidavit was neither attached nor incorporated by suitable words of reference.

The warrant allowed the police to search general categories of data on the cell phone with no objective standard or guidance to the police executing the warrant. The language of the search warrant left to the discretion of the police what to seize. We hold the search warrant violated the particularity requirement of the Fourth Amendment. " '[A] search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional.' " Groh, 540 U.S. at 559 (quoting Massachusetts v. Sheppard, 468 U.S. 981, 988 n.5, 104 S. Ct. 3424, 82 L. Ed. 2d 737 (1984)).[13]

We reverse and remand to dismiss the four convictions of possession of depictions of a minor engaging in sexually explicit conduct.[14]

WE CONCUR:

---

[13] Where a search warrant is an unconstitutional general warrant, the doctrine of severance does not apply. Perrone, 119 Wn.2d at 556-57.

[14] Accordingly, we need not address McKee's argument that probable cause did not support issuing the warrant for dealing in depictions of a minor engaged in sexually explicit conduct in violation of RCW 9.68A.050.