Glasgow, J.
*359 ¶ 1 Based on information received from federal law enforcement, the Vancouver Police Department and Clark County Sheriff's Office obtained and executed a search warrant for the home of Darin Richard Vance to search for depictions of a minor engaged in sexually explicit conduct. Investigators found several such images and ultimately charged Vance with 10 counts of possession of depictions of a minor engaged in sexually explicit conduct. Following a bench trial, Vance was convicted on all 10 counts. He appeals his convictions and sentence.
¶ 2 Vance argues that the search warrant violated article I, section 7 of the Washington Constitution. He contends that the warrant was not sufficiently particular, relying on Division One's decision in State v. McKee , 3 Wash. App. 2d 11, 413 P.3d 1049 (2018), rev'd and remanded , 193 Wash.2d 271, 438 P.3d 528 (2019).[1] We hold that the warrant in this case was different *360 from the one found invalid in McKee and was sufficiently particular to comply with the Fourth Amendment and article I, section 7. We address Vance's remaining arguments in the unpublished portion of this opinion.
¶ 3 We affirm Vance's convictions and sentence.
FACTS
¶ 4 On August 26, 2010, FBI Special Agent Alfred Burney, working undercover in Detroit, Michigan, used a peer-to-peer file sharing program to download 35 files from a software user with an IP address subscribed to Comcast. At least 20 of those files appeared to be pictures of children engaged in sexually explicit activity. Burney then submitted an administrative subpoena to Comcast requesting all subscriber information for the person using that IP address. Comcast responded that the IP address belonged to Vance. Burney sent this information and the downloaded files to the FBI's Seattle office.
¶ 5 The Seattle FBI office obtained and confirmed Vance's street address and sent the information and files it received to Investigator Maggi Holbrook of the Vancouver Police Department and the Clark County Sheriff's Office Digital Evidence Cybercrime Unit.
¶ 6 At the time of Burney's investigation, the FBI was part of an interagency, multi-jurisdictional initiative involving the Department of Justice, the Department of Homeland Security's United States Immigration and Customs Enforcement, and the Internet Crimes Against Children task forces. The sheriff's office's Cybercrime Unit was a local Internet Crimes Against Children task force, and Holbrook was the local liaison. Burney was not involved with the task force himself.
¶ 7 Using the information received from the FBI, Detective Patrick Kennedy of the Vancouver Police Department *361 and Special Agent Julie Peay of Immigration and Customs Enforcement independently verified *1216 Vance's home address. Kennedy then obtained a search warrant for Vance's home. The warrant first authorized a search for "evidence of the crime(s) of: RCW 9.68A.050 Dealing in depictions of a minor engaged in sexually explicit conduct and RCW 9.68A.070 Possession of depictions of a minor engaged in sexually explicit conduct." Clerk's Papers (CP) at 3. The warrant then described the items to be seized, including a list of specific types of electronic devices and media "capable of being used to commit or further the crimes outlined above, or to create, access, or store the types of evidence, contraband, fruits, or instrumentalities of such crimes." CP at 4.
¶ 8 The warrant also identified for seizure the accompanying records, documents, and information necessary to operate and access those devices and data. This description of the goods authorized for seizure concluded with authorization to transfer any and/or all seized items to the Cybercrime Unit:
[F]or the examination, analysis, and recovery of data from any seized items to include: graphic/image files in common formats such as JPG, GIF, PNG or in any other data format in which they might be stored, pictures, movie[ ] files, emails, spreadsheets, databases, word processing documents, Internet history, Internet web pages, newsgroup information, passwords encrypted files, documents, software programs, or any other data files, whether in allocated or unallocated space on the media, whether fully or partially intact or deleted, that are related to the production, creation, collection, trade, sale, distribution, or retention of files depicting minors engaged in sexually explicit acts/child pornography .
CP at 6 (emphasis added).
¶ 9 The Cybercrime Unit executed the warrant on Vance's home and seized several electronic devices. The resulting forensic examination revealed at least 20 images and videos depicting minors engaged in sexually explicit conduct.
*362 ¶ 10 The State charged Vance with seven counts of first degree possession of depictions of a minor engaged in sexually explicit conduct and three counts of first degree dealing in depictions of a minor engaged in sexually explicit conduct. See State v. Vance , 184 Wash. App. 902, 906, 339 P.3d 245 (2014). The trial court redacted from the search warrant affidavit information obtained by federal agents, found probable cause for the search warrant no longer existed, granted the suppression motion, and dismissed the charges against Vance. See id. at 909-10, 339 P.3d 245. Vance then moved to suppress the evidence seized from his home and dismiss the case. Id. at 905, 339 P.3d 245. The trial court granted the motion. CP at 593. The State appealed and we reversed. See id. at 905-06, 339 P.3d 245.
¶ 11 On remand, Vance filed a new motion to suppress the evidence seized from his home arguing in part that the warrant was not sufficiently particular. The trial court denied the motion to suppress, and the parties proceeded to a bench trial. Just before trial, the State filed an amended information dismissing the distribution charges and instead charged Vance with a total of 10 counts of possession of depictions of minors engaged in explicit sexual conduct. After a bench trial, the court found Vance guilty on all 10 counts. Vance requested an exceptional sentence downward, but the court imposed a standard range sentence of 77 months of confinement.
¶ 12 Vance appeals his convictions and sentence.
ANALYSIS
PARTICULARITY OF SEARCH WARRANT
¶ 13 Vance argues that the search warrant for his electronic devices was insufficiently particular to satisfy the Fourth Amendment or article I, section 7, and so all evidence seized as a result of that warrant should have been suppressed. We disagree.
*363 ¶ 14 Both the Fourth Amendment and article I, section 7 require that a search warrant describe with particularity the place to be searched and the persons or things to be seized. State v. Perrone , 119 Wash.2d 538, 545, 834 P.2d 611 (1992). The particularity requirement prevents general and overbroad searches. Id. Where the warrant involves materials potentially protected by the First *1217 Amendment, a greater degree of particularity is required. Id . at 547, 834 P.2d 611. We review de novo whether a search warrant contains a sufficiently particularized description of the items to be searched and seized. Id. at 549, 834 P.2d 611.
¶ 15 A search warrant's description of the place to be searched and property to be seized is sufficiently particular if "it is as specific as the circumstances and the nature of the activity under investigation permit." Id. at 547, 834 P.2d 611. A generic or general description of the things to be seized may be sufficient if probable cause is shown and "a more specific description is impossible" with the information known to law enforcement at the time. Id. Search warrants must be "tested and interpreted in a common sense, practical manner, rather than in a hypertechnical sense." Id. at 549, 834 P.2d 611.
¶ 16 Vance relies on recent case law specifically addressing warrants authorizing searches for and seizures of evidence related to sexually explicit depictions of minors. He analogizes this case to McKee , 3 Wash. App. 2d 11, 413 P.3d 1049.
¶ 17 The search warrant in McKee listed the alleged crimes as "Sexual Exploitation of a Minor RCW 9.68A.040," "Dealing in depictions of minor engaged in sexually explicit conduct RCW 9.68A.050." Id. at 18. The warrant authorized the police to conduct a "physical dump" of "all of the memory of the phone for examination." Id. at 29. The warrant then identified certain "Items Wanted" to be seized from the defendant's cell phone amounting essentially to any "electronic data from the cell phone showing evidence of the above listed crimes." Id. at 18-19.
*364 ¶ 18 In McKee , Division One of our court held that the warrant lacked the requisite particularity because it "was not carefully tailored to the justification to search and was not limited to data for which there was probable cause." Id. at 29. In other words, "the search warrant clearly allow[ed] search and seizure of data without regard to whether the data [was] connected to the crime." Id. "The language of the search warrant left to the discretion of the police what to seize." Id.
¶ 19 The McKee court relied on State v. Besola , in which our Supreme Court held that a mere citation to the child pornography statute at the top of the warrant did nothing to make it more particular. 184 Wash.2d 605, 615, 359 P.3d 799 (2015). The warrant in Besola identified the crime of "Possession of Child Pornography R.C.W. 9.68A.070," and authorized the police to seize:
1. Any and all video tapes, CDs, DVDs, or any other visual and or audio recordings;
2. Any and all printed pornographic materials;
3. Any photographs, but particularly of minors;
4. Any and all computer hard drives or laptop computers and any memory storage devices;
5. Any and all documents demonstrating purchase, sale or transfer of pornographic material.
Id. at 608-09, 359 P.3d 799. The warrant's rote citation to the statute failed to add information, such as the definition of "child pornography" that would have modified or limited the evidence that officers could seize. Id. at 615, 359 P.3d 799. Nor did the warrant include specific language using the citation to the statute "to describe the materials sought." Id. at 614, 359 P.3d 799. The omission of such limiting information created the "primary defect" in the warrant-it covered lawfully possessed materials, such as adult pornography and photographs of minors that did not depict them engaged in sexually explicit acts. Id. at 616, 359 P.3d 799.
¶ 20 The State argues this case more closely resembles State v. Martinez , 2 Wash. App. 2d 55, 408 P.3d 721, review *365 denied , 190 Wash.2d 1028, 421 P.3d 458 (2018). There, Division One upheld a warrant that authorized seizure of any "photographs, pictures, albums of photographs, books, newspapers, magazines and other writings on the subject of sexual activities involving children." Id. at 66, 408 P.3d 721. The warrant also authorized the seizure of "pictures and/or drawings depicting children under the age of eighteen years who may be victims of the aforementioned offenses, and photographs and/or pictures depicting minors under the age of eighteen years engaged in sexually explicit *1218 conduct as defined in RCW 9.68A.011(3)." Id. at 66, 408 P.3d 721.
¶ 21 The Martinez court held the warrant was sufficiently particular because rather than merely cite to the statute, "it use[d] the language 'sexually explicit conduct as defined in RCW 9.68A.011(3).' " Id. at 67, 408 P.3d 721. The court also reasoned that, unlike in Perrone where the warrant contained the overbroad term "child pornography," the Martinez warrant used the statutory language "sexually explicit conduct." Id. at 66, 408 P.3d 721. Finally, while the warrant in Martinez also authorized the seizure of some materials that could be lawfully possessed, that alone did "not automatically make the warrant overbroad." Id. at 67, 408 P.3d 721. "[P]ossession of materials about sexuality involving children [was] relevant to the charged offense." Id. The warrant was not overbroad for authorizing the seizure of relevant materials. Id. For these reasons, the court concluded the warrant provided law enforcement with an objective standard to determine what should be seized. Id.
¶ 22 We conclude that the warrant in this case is more analogous to the one upheld in Martinez than the warrants lacking particularity struck down in McKee , Perrone , and Besola . The warrant in this case explained that there was probable cause to search for "evidence of the crime(s) of: RCW 9.68.050 Dealing in depictions of a minor engaged in sexually explicit conduct and RCW 9.68A.070 Possession of depictions of a minor engaged in sexually explicit conduct." CP at 3. Then throughout, the warrant *366 authorizes a search for computers or various devices "capable of being used to commit or further the crimes outlined above, or to create, access, or store the types of evidence, contraband, fruits, or instrumentalities of such crimes," connecting the search to depictions of minors engaged in sexually explicit conduct in a manner that was absent in Besola , 184 Wash.2d at 609, 359 P.3d 799. CP at 4.
¶ 23 Furthermore, the final paragraph of the warrant permits the Cybercrime Unit to transfer the electronic and related devices and to search them for "graphic/image files in common formats ... pictures, movie[ ] files, emails, spreadsheets, databases, word processing documents, Internet history, ... newsgroup information, ... encrypted files" and other similar files "that are related to the production, creation, collection, trade, sale, distribution, or retention of files depicting minors engaged in sexually explicit acts/child pornography." CP at 5-6.
¶ 24 Unlike the warrants in Besola and McKee , the warrant here regularly referred back to the statutory language limiting the evidence that officers could seize and so was sufficiently particular to cover only data and items connected to the crime. Unlike the warrant in McKee , which merely identified the crime of "Sexual exploitation of a minor," or Perrone , which only used the overbroad term, "child pornography," here the warrant used the more specific language, "Possession of depictions of a minor engaged in sexually explicit conduct." McKee , 3 Wash. App. 2d at 18, 413 P.3d 1049 ; Perrone , 119 Wash.2d at 553-54, 834 P.2d 611 ; CP at 134. The warrant here used sufficiently specific language to authorize the seizure of only illegal materials.
¶ 25 Vance argues that the warrant should have included the definition of "sexually explicit conduct" in RCW 9.68A.011(3). To be sure, adding a reference to that definition would have made this warrant even more precise. But the warrant taken as a whole makes it clear to the executing officer what specific items are authorized for search and seizure. And it does not appear that this warrant *367 authorized law enforcement to search for and seize adult pornography or depictions of children more generally. While the warrant contemplates that law enforcement would retain Vance's devices for a period of time to search them for the files to seize, allowing law enforcement some amount of time to search electronic devices for this specifically identified evidence to seize does not undermine the validity of the warrant.
¶ 26 Accordingly, we hold that the search warrant was sufficiently particular. To the extent McKee contradicts our conclusion, we disagree with McKee . We affirm Vance's convictions and his sentence.
¶ 27 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington *1219 Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.
We concur:
Worswick, J.
Maxa, C.J.

The issue before the Washington Supreme Court in McKee was whether the proper remedy following suppression of cell phone evidence was to vacate the defendant's convictions and remand to trial court for further proceedings, or to order all the counts dismissed. 438 P.3d at 530. The court held that the Court of Appeals should have vacated and remanded, rather than dismissing. Id. The Supreme Court did not address whether the warrant was sufficiently particular. Id.