[No. 33833-5-II.   Division Two.   December 5, 2006.]

THE STATE OF WASHINGTON, *Respondent*, v. LLOYD JAMES HIGGINS, *Appellant*.

*Jodi R. Backlund* and *Manek R. Mistry* (of *Backlund & Mistry*), for appellant.

*Jeremy R. Randolph, Prosecuting Attorney*, for respondent.

¶1 Van Deren, J. — Lloyd James Higgins appeals his domestic violence second degree assault conviction for allegedly firing a gun at his wife, Patricia Higgins. He claims that police seized evidence pursuant to an overbroad search warrant. He also claims other errors that we do not reach. Because the search warrant did not specify the particular crime in question, did not contain a list of items to be seized, and did not expressly refer to the probable cause affidavit, any evidence seized under it should have been suppressed under the particularity requirement of the Fourth Amendment. U.S. Const. amend. IV. We reverse and remand with instructions to suppress the seized evidence.

## FACTS

¶2 After quarreling most of the day and drinking heavily at the 99 Bar, Lloyd and Patricia[1] went home separately. Lloyd locked Patricia out, and she called the police for assistance in entering the home. Officer Johnny Gonzales of the Centralia Police Department responded. He knocked on the front door. When nobody answered, he went around to the side of the house and, seeing Lloyd lying on the bed, knocked on the window, again receiving no response. He borrowed a key from the landlord and let Patricia in through the sliding back door. After returning the key to the landlord next door, he encountered Centralia Police Officer Tracy Murphy at the side of the house. Gonzales and Murphy then heard a gunshot from inside the house.

¶3 The officers detained Lloyd and Patricia. Patricia initially claimed that she fired the gun. She later testified that after she had entered the residence, she walked down

---

[1] For clarity, we will refer to Mr. and Mrs. Higgins by their first names. We intend no disrespect.

a hallway toward the bedroom and, reaching the washer and dryer, looked up and saw Lloyd pointing a gun at her. She heard the gun fire and was grabbed from behind and shoved against the wall, shattering her hip.

¶4 Gonzales obtained a search warrant authorizing seizure of "certain evidence of a crime, to-wit: 'Assault 2nd DV' RCW 9A.36.021." Clerk's Papers (CP) at 22. An affidavit describing the underlying incident and establishing probable cause to search for "a Glock pistol, unknown serial number or caliber; a spent casing, bullets, and an entry and possibly exit point where the bullet struck" was attached to the warrant. CP at 24.

¶5 After searching the house under the warrant, Gonzales found all anticipated items. A 40-caliber handgun and a clip were next to the bed. A spent casing was on the TV stand. There were holes indicating that the bullet had gone through the bedroom wall and through an exterior wall. The bullet was found on the patio.

¶6 The State charged Lloyd with second degree assault, "which is a violation of RCW 9A.36.021(1)(c)," alleging that he had assaulted Patricia "with a deadly weapon." CP at 14.

¶7 Lloyd moved to suppress evidence seized under the search warrant because the warrant violated the particularity clause of the Fourth Amendment. Specifically, he noted that the warrant did not contain a list of items to be seized, did not incorporate the affidavit by reference, and did not list a subsection of the second degree assault statute. Finding that no subsection of the statute was needed and that the affidavit was attached to the warrant and contained a particular list of items to be seized, the trial court concluded that the warrant satisfied the particularity requirement and denied the suppression motion.

¶8 In closing argument, the prosecutor emphasized that the locations where officers found the bullet holes, the gun, and the magazine corroborated Patricia's story. The jury convicted Lloyd on one count of domestic violence second degree assault.

## ANALYSIS

¶9 Lloyd argues that the search of his residence violated the particularity requirement of the warrant clause and that the trial court therefore should have suppressed the evidence seized. Under the Fourth Amendment, a warrant must describe with particularity the things to be seized. *Groh v. Ramirez*, 540 U.S. 551, 557, 124 S. Ct. 1284, 157 L. Ed. 2d 1068 (2004); *State v. Riley*, 121 Wn.2d 22, 28, 846 P.2d 1365 (1993). This requirement serves two functions by "limit[ing] the executing officer's discretion"; and "inform[ing] the person subject to the search what items [may be] seize[d]." *Riley*, 121 Wn.2d at 29.

¶10 Neither the officer's personal knowledge of the crime nor a proper execution of the search may cure an overbroad warrant. *Riley*, 121 Wn.2d at 29. For example, in *Riley* our Supreme Court held that a warrant authorizing the seizure of " 'fruits, instrumentalities, and/or evidence of a crime,' " followed by a list of various items that might fit the description, was overbroad because it did not limit the seizure by stating the crime under investigation. *Riley*, 121 Wn.2d at 26. Although the investigator knew that he was seeking items involved in the crime of computer trespass and limited his search accordingly, the court reversed the conviction. *Riley*, 121 Wn.2d at 28-29. "Because the person whose home is searched has the right to know what items may be seized, an overbroad warrant is invalid whether or not the executing officer abused his discretion." *Riley*, 121 Wn.2d at 29 (citing *In re Application of Lafayette Acad., Inc.*, 610 F.2d 1, 5 (1st Cir. 1979)).

¶11 Three factors are relevant to determine whether a warrant is overbroad:

"(1) whether probable cause exists to seize all items of a particular type described in the warrant, (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not, and (3) whether the government was able to describe

the items more particularly in light of the information available to it at the time the warrant was issued."

*United States v. Mann*, 389 F.3d 869, 878 (9th Cir. 2004) (quoting *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986)).

¶12 Here, there is no question that the government was able to describe the items more particularly, given that Gonzales's affidavit used more particular terms: "a Glock pistol, unknown serial number or caliber; a spent casing, bullets, and an entry and possibly exit point where the bullet struck." CP at 24. The warrant could easily have specified these items, rather than the general description of "certain evidence of a crime, to-wit: 'Assault 2nd DV' RCW 9A.36.021." CP at 22.

¶13 That the affidavit was attached to the warrant is irrelevant because the warrant did not incorporate the affidavit by reference. In *Riley*, although the affidavit mentioned computer trespass as the crime under investigation, our Supreme Court held that this could not cure the lack of particularity because the affidavit was neither attached to nor mentioned in the warrant. *Riley*, 121 Wn.2d at 29. The court clarified that both an attachment and suitable words of reference are necessary for an affidavit to cure an overbroad warrant. *Riley*, 121 Wn.2d at 29-30 (an affidavit attached to a warrant could not cure the warrant's lack of particularity because of improper words of incorporation) (citing *United States v. Strand*, 761 F.2d 449, 453-54 (8th Cir. 1985)).

¶14 In *Groh*, the United States Supreme Court affirmed the Ninth Circuit's invalidation of a search warrant that had an attached affidavit that was sealed and not given to the homeowner. Only the warrant that did not list what was to be seized was given to the homeowner. *Groh*, 540 U.S. at 555. The warrant recited that the issuing magistrate found probable cause based on the application, but the United States Supreme Court held this insufficient, stating:

[U]nless the particular items described in the affidavit are also set forth in the warrant itself (or at least incorporated by reference, and the affidavit present at the search), there can be no written assurance that the Magistrate actually found probable cause to search for, and to seize, every item mentioned in the affidavit.

*Groh*, 540 U.S. at 560.

¶15 Moreover, the general reference to evidence of domestic violence second degree assault under RCW 9A.36-.021 authorized seizure of items for which there was no probable cause. RCW 9A.36.021(1) contains six different means to commit second degree assault, a class B felony. Here, the State had probable cause to search the premises for evidence under RCW 9A.36.021(1)(c) (assault with a deadly weapon), but it did not have probable cause to search for evidence of violations described in subsections 9A.36.021(1)(a), (b), (d), (e), or (f). The broad reference to section .021 allowed the officers to seek evidence that Patricia was pregnant (*see* RCW 9A.36.021(1)(b)), evidence of poison (RCW 9A.36.021(1)(d)), or a range of evidence bearing on Lloyd's state of mind. *See* RCW 9A.36.021(1)(a) (intentional assault and reckless infliction of substantial bodily injury); .021(1)(e) (intent to commit a felony); .021(1)(f) (knowing infliction of pain or agony equivalent to torture). Moreover, 9A.36.021(2) describes a Class A felony if there is a finding of sexual motivation. RCW 9A.36.021(2)(b).

¶16 Finally, the warrant failed to differentiate between items subject to seizure and those that were not. An overbroad reference to the crime can be permitted, for instance, where the authorized search is limited to illicit items. *State v. Chambers*, 88 Wn. App. 640, 645-46, 945 P.2d 1172 (1997). In *Chambers*, police had probable cause to search for marijuana, but the trial court suppressed the marijuana seized in the search because the warrant exceeded this scope by authorizing seizure of " 'any and all controlled substances.' " *Chambers*, 88 Wn. App. at 642. Because the warrant described items that were inherently illegal, we applied more lenient scrutiny than would have

applied to a warrant authorizing seizure of inherently innocuous items. *Chambers*, 88 Wn. App. at 644. The warrant further limited the officers' leeway by including a list of items subject to seizure, confining the search to items relating to controlled substances, drug paraphernalia, drug transactions, or drug manufacture. *Chambers*, 88 Wn. App. at 646. Noting that such items would have been subject to seizure under the plain view doctrine if police had entered the premises under a warrant authorizing seizure of marijuana, we reversed the suppression order. *Chambers*, 88 Wn. App. at 645, 649.

¶17 A warrant can also be limited by specific examples of items pertinent to the named crime. *State v. Reid*, 38 Wn. App. 203, 212, 687 P.2d 861 (1984). In *Reid*, the warrant authorized seizure of " 'a shotgun, ammunition for the shotgun, a dark leather or vinyl jacket, a pillowcase or other bedlinen with a pattern of daisies, leaves, and strawberries on it, nitrates, and any other evidence of the homicide.' " *Reid*, 38 Wn. App. at 211. Reid challenged his conviction on the ground that the language " 'any other evidence of the homicide' " authorized a general search. *Reid*, 38 Wn. App. at 212. Division One rejected this argument, holding that the specific items listed, in conjunction with the limitation to evidence of homicide, provided adequate guidelines for the search. *Reid*, 38 Wn. App. at 212.

¶18 Here, the warrant in no way limited the search to illicit items. Indeed, the broad reference to RCW 9A.36.021 allowed seizure of such innocuous items as household cleaners, home pregnancy tests, literature with sexual content, and fireplace pokers. And the warrant contained no list of examples to guide the search. Accordingly, the search was executed pursuant to an overbroad warrant and all items seized should have been suppressed.

¶19 The failure to suppress was prejudicial. There was conflicting evidence about who had fired the gun. While Patricia testified that Lloyd fired it, she admitted to initially telling the police that she fired it. To bolster the later version, the State relied heavily on the locations of the gun,

the magazine, and the bullet hole. Thus, the State cannot show beyond a reasonable doubt that the jury would have reached the same verdict without the seized evidence. *See State v. Guloy*, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985) ("A constitutional error is harmless if the appellate court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of the error." (citing *State v. Stephens*, 93 Wn.2d 186, 190-91, 607 P.2d 304 (1980))).

¶20 Because we reverse and remand on this ground, we do not reach Higgins's remaining claims.

¶21 Reversed and remanded for suppression of evidence seized under the warrant.

HOUGHTON, C.J., and HUNT, J., concur.