IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 78045-0-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| ERIC SHAWN THOMAS, | |
| Appellant. | FILED: May 28, 2019 |

CHUN, J. — The State originally charged Eric Thomas with one count of voyeurism. After obtaining a search warrant for Thomas's cell phone, police found video showing a separate incident of voyeurism, which gave rise to a second charge. Thomas moved to suppress the video, claiming the warrant was overbroad. The trial court denied the motion. Thomas appeals his conviction on both counts of voyeurism, renewing the warrant issue and claiming ineffective assistance of counsel and prosecutorial misconduct. Thomas also appeals the imposition of certain community custody conditions. Because the warrant provision provided clear parameters to the executing officer, and Thomas fails to establish his other claims, we affirm.

I.
BACKGROUND

On May 1, 2017, K.H. and D.C. were engaging in sexual intercourse inside the bedroom of K.H.'s apartment when K.H. saw someone looking through her partially-closed blinds. K.H. screamed and D.C. pulled on pants and ran out

the door. D.C. ran into the alley behind the apartment. D.C. looked over the seven-foot fence adjacent to the apartment building, and saw Thomas crouching on the other side with a cell phone in hand. Seeing the cell phone, D.C. assumed Thomas had been filming them. D.C. told Thomas to jump over the fence and Thomas complied. Thomas told D.C. he had been urinating behind the building. The two had a verbal altercation.

K.H. came outside and called 911. During the call, D.C. provided a physical description to the police. Thomas walked down the street and into another apartment complex.

Seattle Police Officer Christopher Shoul responded to the call. Officer Shoul took statements from D.C. and K.H., while another police unit patrolled the area looking for Thomas. After Officer Shoul finished investigating at the scene, he located Thomas sitting at a nearby bus stop. Thomas told Officer Shoul he had been watching basketball playoffs and drinking at a bar with some friends. After being told one of the victims would come by to identify him, Thomas eventually told Officer Shoul that he had gone around the building to urinate and heard two people "having sex." Thomas said he looked and said "wow."

Officer Shoul returned to the apartment and took D.C to the bus stop to identify Thomas. D.C. positively identified Thomas. Another officer arrested and transported Thomas to the police station, where his cell phone was placed into evidence.

Seattle Police assigned Detective Scott Hatzenbuehler to the case. Thomas told Detective Hatzenbuehler the following version of events: He had

2

been drinking beers and watching a playoff game with some friends at a bar in the area. He walked to the bus stop after the game, but missed the bus. While sitting at the bus stop, Thomas had to use the restroom and walked around the back of an apartment building to relieve himself. While relieving himself, Thomas heard "some sex going on." Then Thomas heard someone at the window yelling. Soon after, a man came running out and accused Thomas of watching them. Thomas was not video recording and there was nothing of that nature on the phone.

Detective Hatzenbuehler applied for and obtained a search warrant for Thomas's cell phone. The search warrant permitted a search of Thomas's phone to find evidence related to its use on May 1, 2017 including calls, messages, photographs, videos, and location data. The warrant also allowed for a search for "[p]hotographs of [K.H.] or [D.C.], or any parts of a male or female that could be [K.H.] or [D.C.], or of [K.H.'s] apartment building, whether the interior or exterior of that building," and "any other information that is evidence of the above-listed crime(s)," without date restriction.

A specially-trained detective extracted the data from the cell phone. Upon receiving the data, Detective Hatzenbuehler began looking for video[1] or images pursuant to the warrant. Looking for evidence of voyeurism, Detective Hatzenbuehler first scrolled through the videos and saw a thumbnail image from

---

[1] Despite the warrant provision's limitation to "photographs," Detective Hatzenbuehler searched for videos. Thomas does not object to the search on this ground. Neither Thomas nor the State distinguishes between photographs and videos in their arguments. Because there is no meaningful difference between photographs and videos in this context, we also do not distinguish between them in our analysis.

video 19 showing window blinds with what looked like a light on inside and darkness outside. Detective Hatzenbuehler played the short, 20-second video. The video, dated April 4, 2017 appeared to show voyeuristic activity on the part of the person recording.

Although Detective Hatzenbuehler believed the evidence was within the scope of the warrant, he decided to obtain an addendum to the warrant in case he found additional evidence.[2] Upon examination, video 19 appeared to be shot through a window and showed a woman sitting at a computer. The woman never looked in the direction of the recording. Detective Hatzenbuehler later determined the woman in the video was C.W., who lived in the same apartment building as, and just next door to, K.H.

The State originally charged Thomas with one count of voyeurism. After discovery of the video of C.W., the State amended the information to include a second count of voyeurism.

In pretrial motions, Thomas attempted to suppress the video of C.W., arguing Detective Hatzenbuehler exceeded the scope of the warrant and obtained the video pursuant to an overbroad warrant. The trial court denied the motion.

During trial, Thomas moved for a mistrial due to admission of an audio recording of the 911 call. The trial court also denied this motion. The jury found Thomas guilty on both counts.[3] Thomas now appeals.

---

[2] Thomas does not raise any claims related to the warrant addendum.
[3] Below, additional pertinent facts are introduced as needed for the individual issues.

4

II.
ANALYSIS

A. Search Warrant

Thomas argues the trial court erroneously admitted the video of C.W., because police obtained it through an overbroad search warrant.[4] Thomas claims this results in insufficient evidence to convict on Count II and prejudice as to Count I, requiring reversal for both counts. The State contends police found the video of C.W. pursuant to a sufficiently particular search warrant. Because the warrant provided clear parameters to the executing officer, we agree with the State.

Cell phones are "private affairs" under article I, section 7 of the Washington State Constitution, requiring a warrant or an applicable exception for a lawful search. State v. Samalia, 186 Wn.2d 262, 268, 375 P.3d 1082 (2016). The Fourth Amendment to the United States Constitution requires a warrant to describe with particularity the things to be seized. State v. Higgins, 136 Wn. App. 87, 91, 147 P.3d 659 (2006). This requirement exists to "make a general search 'impossible and prevent[ ] the seizure of one thing under a warrant describing another.'" State v. McKee, 3 Wn. App. 2d 11, 22, 413 P.3d 1049 (2018) (quoting Marron v. United States, 275 U.S. 192, 196, 48 S. Ct. 74, 72 L. Ed. 231 (1927)), rev'd on other grounds, No. 96035-6 (Wash. Apr. 22, 2019), http://www.courts.wa.gov/opinions/pdf/960356.pdf). Particularity also eliminates

---

[4] During oral argument, Thomas's counsel noted that Detective Hatzenbuehler "arguably" did not act outside the warrant. Rather than argue Detective Hatzenbuehler acted outside the warrant, Thomas assigned error to the language of the warrant and argued overbreadth. Wash. Court of Appeals oral argument, State v. Thomas No. 78045-0-I (April 16, 2019), at 2 min., 47 sec. through 2 min., 59 sec. (on file with court).

unlimited discretion in the executing officer's determination of what to seize, and informs the person subject to the search of what items the officer may seize. State v. Besola, 184 Wn.2d 605, 610-11, 359 P.3d 799 (2015). The degree of particularity depends on the nature of the materials sought and the facts of the case. State v. Keodara, 191 Wn. App. 305, 313, 364 P.3d 777 (2015).

"In general, Washington courts have recognized that the search of computers or other electronic storage devices gives rise to heightened particularity concerns." Keodara, 191 Wn. App. at 314. This heightened particularity arises because "advances in technology and the centrality of computers in the lives of average people have rendered the computer hard drive akin to a residence in terms of the scope and quantity of private information it may contain." United States v. Galpin, 720 F.3d 436, 446 (2nd Cir. 2013).

"A properly issued warrant 'distinguishes those items the State has probable cause to seize from those it does not,' particularly for a search of computers or digital storage devices." Keodara, 191 Wn. App. at 314 (quoting State v. Askham, 120 Wn. App. 872, 879, 86 P.3d 1224 (2004)). An overbroad warrant lacks the requisite particularity. See Keodara, 191 Wn. App. at 312. Three factors assist in determining whether a warrant suffers from overbreadth:

> "(1) whether probable cause exists to seize all items of a particular type described in the warrant, (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not, and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued."[5]

---

[5] This opinion refers to these as the "Higgins factors."

Higgins, 136 Wn. App. at 91-92 (internal quotation marks omitted) (quoting United States v. Mann, 389 F.3d 869, 878 (9th Cir. 2004)).

Courts evaluate search warrants "in a commonsense, practical manner, rather than in a hypertechnical sense." State v. Perrone, 119 Wn.2d 538, 549, 834 P.2d 611 (1992) (citing United States v. Turner, 770 F.2d 1508, 1510 (9th Cir. 1985) cert. denied, 475 U.S. 1026 (1096)). "The underlying measure of adequacy in a description is whether, given the specificity of the warrant, a violation of personal rights is likely." Keodara, 191 Wn. App. at 313. "A search warrant must be definite enough that the executing officer can identify the property sought with reasonable clarity and eliminate the chance that the executing officer will exceed the permissible scope of the search." State v. McKee, 3 Wn. App.2d at 28-29.

Appellate courts review de novo a trial court's probable cause and particularity determinations on a motion to suppress. Keodara, 191 Wn. App. at 312. Admission of evidence obtained in violation of the state or federal constitution amounts to an error of constitutional magnitude. Keodara, 191 Wn. App. at 317.

Here, Thomas alleges overbreadth based on the provision of the original warrant authorizing a search of Thomas's cell phone for "[p]hotographs of [K.H.] or [D.C.], or any parts of a male or female that could be [K.H.] or [D.C.], or of [K.H.'s] apartment building, whether the interior or exterior of that building."[6] This

---

[6] During oral argument, counsel raised an issue of overbreadth as to an additional warrant provision allowing search of the cell phone for "[a]ny other information that is evidence of the above-listed crimes(s)." Wash. Court of Appeals oral argument, State v. Thomas No. 78045-0-I (April 16, 2019), at 3 min., 1 sec. through 3 min., 29 sec. (on file with court). However,

provision of the warrant did not limit the search to the specific date of the incident. Thomas argues the lack of a date restriction caused the warrant to fail the Higgins factors and allowed for search and seizure of data without regard to its connection to the crime on May 1, 2017.

Thomas likens this case to Keodara, which involved a fatal shooting at a bus stop. 191 Wn. App. at 311. Five weeks after the shooting and based on an unrelated incident, the police obtained a search warrant authorizing search of the defendant's cell phone for a broad range of cell phone data, including all call activity, photographs, videos, documents, and internet activity, based on the police officer's belief that gang members' phones often contain evidence of criminal activity. Keodara, 191 Wn. App. at 309-10. The cell phone contained images of the defendant wearing clothes similar to those of the bus stop shooter and the State charged the defendant with murder. Keodara, 191 Wn. App. at 311.

The defendant moved to suppress all evidence from the phone for lack of probable cause. Keodara, 191 Wn. App. at 311. The supporting affidavit relayed only the officer's knowledge of gang members' use of their phones to document their activities. Keodara, 191 Wn. App. at 310-11. The warrant authorized the search for stored information, and "any and all other evidence suggesting the crimes listed above [assault in the fourth degree, unlawful possession of firearms, possession with intent to deliver or sell narcotics.]" Keodara, 191 Wn.

---

Thomas's briefing addresses only the specific photograph provision. We do not consider arguments made outside the briefing. RAP 10.3.

App. at 309-10. This court found the warrant overbroad because, "[t]here was no limit on the topics of information for which the police could search. Nor did the warrant limit the search to information generated close in time to the incidents for which the police had probable cause." Keodara, 191 Wn. App. at 316.

Similarly, McKee, 3 Wn. App.2d at 29, involved a warrant authorizing a "physical dump" of the phone's memory. During an investigation of sexual exploitation of a minor and dealing in depictions of a minor engaged in sexually explicit conduct, police obtained a warrant authorizing a search for all images, videos, documents, calendars, call logs, and other data. McKee, 3 Wn. App.2d at 29. "The warrant gives the police the right to search the contents of the cell phone and seize private information with no temporal or other limitations." McKee, 3 Wn. App.2d at 29. This allowed a search of general categories of data without objective standards to guide the police executing the warrant. McKee, 3 Wn. App.2d at 29. As a result, the warrant failed to meet the particularity requirement of the Fourth Amendment. McKee, 3 Wn. App.2d at 29.

In Keodara and McKee, the warrants lacked particularity because they allowed for searches of a broad range of data without a data or date restriction. However, neither Keodara nor McKee hold that a warrant must include both data and date restrictions to satisfy the particularity requirement. Rather, the warrants in the cases lacked either limitation, and therefore suffered from overbreadth. As noted in McKee, the warrant gave police "the right to search the contents of the cell phone and seize private information with no temporal *or* other limitation." 3 Wn. App.2d at 29 (emphasis added).

9

Unlike the wide-ranging warrants in Keodara and McKee, the warrant in this case provided specific, case-related limits to the search. Most of the warrant provisions limited the search to digital information from May 1, 2017. The provision at issue lacked a date restriction but included a data restriction that limited the search only to images depicting D.C., K.H., K.H.'s apartment building, or "any parts of a male or female that could be" K.H. or D.C. With this data restriction, the warrant resembles the one upheld in Askham. 120 Wn. App. at 879. In Askham, the warrant allowed for seizure of a wide range of digital storage, including computers, drives, disks, and other memory storage. 120 Wn. App. at 879. While the warrant allowed search of a broad category of material, it specified the files and applications for search. Askham, 120 Wn. App. at 879. The warrant listed text files related to the victim, specific internet sites, graphic images and image files, and text files relating to manipulation of digital images. Askham, 120 Wn. App. at 879. With these established parameters, "[t]he warrant's description left no doubt as to which items were to be seized and was 'not a license to rummage for any evidence of any crime.'" Keodara, 191 Wn. App. at 314 (quoting Askham, 120 Wn. App. at 880). As a result of this specification of files subject to search, the warrant satisfied the particularity requirement.

With its limitation to photographs of D.C., K.H., K.H.'s building, and "any parts of a male or female that could be" K.H. or D.C., the warrant provision at issue in this case includes even more restrictive language than in Askham. The warrant allowed Detective Hatzenbuehler to search solely for those particular

images on the cell phone. The search was more akin to the physical search of a box of photographs than an examination of the entire digital contents of a cell phone as found in Keodara and McKee. Rather than allowing law enforcement to rummage through a wide range of private information that Thomas might have had on his phone, the provision focused on the category of images.

In examining these images, "[a] degree of flexibility is required." See United States v. Abboud, 438 F.3d 554, 576 n.7 (6th Cir. 2006). This includes flexibility as to dates as "'evidence that date[s] from outside of the time period' described in the warrant affidavit 'may be relevant to the activity within the time period.'" United States v. Manafort, 313 F.Supp.3d 213, 235, (D.D.C. 2018) (quoting Abboud, 438 F.3d at 576, n.7). The United States Supreme Court has recognized that "proof of similar acts is admissible to show intent or the absence of mistake." Andresen v. Maryland, 427 U.S. 463, 483, 96 S. Ct. 2737, 49 L.Ed.2d 627 (1976). In this case, images of K.H., D.C., and K.H.'s building from prior dates are relevant to the crime charged for this very reason. The State relied on the April video of C.W. to argue that Thomas purposefully went behind to building to look in the windows.[7]

Here, the warrant did not allow for a broad search of files for photographs or videos unrelated to the crime at issue or violate the Higgins factors. The warrant provided clear parameters to the executing officer. Detective Hatzenbuehler could not legally search for images depicting other people in other

---

[7] The defense did not object to the State's use of this evidence during closing argument and rebuttal.

places; if video 19 depicted C.W. in a different building, the evidence would have been outside the original warrant. Therefore, the warrant was not overbroad.

B. Ineffective Assistance of Counsel

Thomas argues ineffective assistance of trial counsel based on the proposal of an incorrect jury instruction and the inadvertent admission of potentially damaging evidence from a 911 call. While counsel erred in both respects, Thomas cannot demonstrate prejudice as a result of those errors.

Effective assistance of counsel is guaranteed by the Sixth Amendment of the United States Constitution and article I, section 22 of the Washington Constitution. State v. Hendrickson, 129 Wn.2d 61, 77, 917 P.2d 563 (1996). To prevail on a claim of ineffective assistance of trial counsel, a defendant must prove both deficient performance and prejudice. State v. Jones, 183 Wn.2d 327, 339, 352 P.3d 776 (2015).

Establishing deficient performance requires a showing that counsel's representation fell below an objective standard of reasonableness based on all the circumstances. State v. Thomas, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987). Prejudice sufficient to support a claim of ineffective assistance of counsel occurs when counsel's errors were so serious as to deprive the defendant of a fair trial. Hendrickson, 129 Wn.2d at 78. The defendant must show a "reasonable probability that, but for counsel's errors, the result of the trial would have been different." Hendrickson, 129 Wn.2d at 78.

A claim of ineffective assistance of counsel is a mixed question of law and fact that an appellate court reviews de novo. Jones, 183 Wn.2d at 338-39.

1. Jury Instruction

Thomas alleges trial counsel provided ineffective assistance of counsel by proposing inaccurate and incomplete lesser included offense instructions. The State argues Thomas cannot establish the prejudice necessary to support an ineffective assistance claim. We agree with the State.

Jury instructions must not be misleading and must properly inform the trier of fact. State v. Grimes, 92 Wn. App. 973, 978, 966 P.2d 394 (1998). "The jury is presumed to read the court's instructions as a whole, in light of all other instructions." State v. Hutchinson, 135 Wn.2d 863, 885, 959 P.2d 1061 (1998). Additionally, the appellate court reviews individual jury instructions in the context of the instructions as a whole. State v. Tyler, 191 Wn.2d 205, 216, 422 P.3d 436 (2018).

> Here, the trial court issued instruction 10, defining voyeurism:
>
> A person commits the crime of *voyeurism* when, for the purposes of arousing or gratifying the sexual desire of any person, the person knowingly views or photographs or films a second person without the second person's knowledge and consent, and while the second person is being viewed or photographed or filmed, the second person is in a place where he or she would have a reasonable expectation of privacy.

(Emphasis added.) The trial court also gave a to-convict instruction for voyeurism as instruction 15.

Defense counsel proposed lesser included offense instructions for attempted voyeurism in the first degree.[8] The trial court subsequently provided

---

[8] Although counsel proposed the instruction, the invited error doctrine does not bar Thomas's argument for ineffective assistance based on this issue. State v. Kyllo, 166 Wn.2d 856, 861, 215 P.3d 177 (2009). "If instructional error is the result of ineffective assistance of counsel, the invited error doctrine does not preclude review." Kyllo, 166 Wn.2d at 861. In other words, the

the suggested instructions on attempted voyeurism in the first degree. The trial court instructed, "A person commits the crime of attempted *Voyeurism in the first degree* when, with the intent to commit that crime, [they do] any act that is a substantial step toward the commission of that crime." (Emphasis added.) The court also gave the following to-convict instruction:

> To convict the defendant of the crime of attempted *voyeurism in the first degree*, each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about May 1, 2017, the defendant did an act that was a substantial step toward the commission of voyeurism in the first degree;
>
> (2) That the act was done with the intent to commit voyeurism in the first degree; and
>
> (3) That the act occurred in the State of Washington.

(Emphasis added.)

However, when Thomas committed the crimes in April and May 2017, voyeurism in the first degree did not exist. Former RCW 9A.44.115 established only the single crime of voyeurism. The legislature amended RCW 9A.44.115 and divided the crime of voyeurism into first and second degree offenses in 2017, effective July 23, 2017. LAWS OF 2017, ch. 292, sec. 1. Thomas's trial occurred in 2018, after the effective date of the statute establishing the crime of voyeurism in the first degree. Therefore, defense counsel successfully proposed jury instructions for a crime that existed at the time of trial but did not pertain to Thomas based on the dates of his offenses. Additionally, the lesser included offense instructions refer to voyeurism in the first degree, while the main offense

---

invited error doctrine does not apply where the error at issue serves as the basis for an ineffective assistance claim.

14

instructions, instructions 10 and 15, refer to voyeurism rather than voyeurism in the first degree.

Despite the erroneous instructions on attempted voyeurism in the first degree, Thomas cannot demonstrate a "reasonable probability that, but for counsel's errors, the result of the trial would have been different." Hendrickson, 129 Wn.2d at 78. The elements for voyeurism under former RCW 9A.44.115 are identical to those for voyeurism in the first degree under the amended statute RCW 9A.44.115(2)(a). Regardless of the name, the jury received the correct definition and elements for the lesser included offense.

Furthermore, the jury instructions included only the single definition of voyeurism given in instructions 10 and 15. The jury had no other definition of voyeurism before it. Because the only definition provided the correct elements of the law, the likelihood of confusion was minimal. Taking the jury instructions as a whole, the only definition given for voyeurism properly informed the jury of the applicable law. Thomas has not shown that the instructions created any confusion for the jury. As a result, his ineffective assistance claim on this ground fails.

2. 911 Call

Prior to trial, Thomas brought a motion in limine to preclude the witnesses from testifying that he, or anyone else, looked through K.H.'s window on prior occasions. The State did not object, and the trial court granted the motion.

During trial, the State played the entirety of the recorded 911 call placed by K.H. during the incident. On the recording, K.H. states, "I've seen him before

15

in our window," and "he watches me." D.C. also says, "[H]e's done this before."[9] After the jury heard the audio recording, defense counsel requested a sidebar and moved for a mistrial. The trial court subsequently denied the mistrial and admonished counsel, "I was a little taken aback, because I feel that it was incumbent on the counsels to know the evidence that's being presented before the court." Defense counsel declined a curative instruction for fear it would call attention to the statements. The parties agreed to redact the recording in case the jury requested to listen to it again. The trial court admitted the redacted version into evidence to substitute for the original, but the jury did not ask to hear the call again.

Thomas argues ineffective assistance due to trial counsel's failure to review the 911 call for potentially damaging statements and object to its admission on proper grounds. The State contends Thomas cannot demonstrate the requisite prejudice because the jury may not have heard the statements and the statements were essentially cumulative of the video of C.W. We agree with the State.

Through muffled statements on the 911 call, the jury potentially learned that Thomas had been outside K.H.'s apartment prior to May 1, 2017. However, C.W. and K.H. have neighboring windows in the apartment building. Admission of video of C.W., taken from the same location outside their neighboring apartment windows on April 4, 2017, provided essentially the same information to

---

[9] The trial court did not hear the statements when the recording was played for the jury. The trial court only discerned the statements after listening again outside of proceedings.

the jury. The State repeatedly referred to the April date of the video. Therefore, admissible evidence placed Thomas outside of C.W. and K.H.'s bedroom windows within the month prior to the incident.

Additionally, the video of C.W. and the erroneous evidence from the 911 call both negated Thomas's defense of happenstance. The video of C.W. demonstrated that Thomas had been behind the building on a prior occasion, making his presence on May 1, 2017 less likely related to his emergent need to find a place to urinate. The statements from the 911 call established that Thomas watched K.H. on prior occasions, allowing for the conclusion that he did not randomly decide to urinate in that location. As a result, the 911 call provided redundant evidence to negate Thomas's claims.

Because the video of C.W. taken from outside their neighboring windows demonstrated Thomas's prior presence outside of K.H.'s window and negated any claim of mistake, the statements in the 911 call amounted to cumulative evidence. Thomas fails to demonstrate "reasonable probability that, but for counsel's errors, the result of the trial would have been different." Hendrickson, 129 Wn.2d at 78. Therefore, Thomas cannot show prejudice to support ineffective assistance of counsel on this ground.

C. Prosecutorial Misconduct

Thomas claims the prosecutor committed misconduct during closing argument by undermining the presumption of innocence. The State argues that an objection and instruction from the court would have cured any prejudice resulting from the prosecutor's comment. While we agree that the prosecutor's

17

statements amount to an error of law, Thomas fails to demonstrate the prejudice required for a successful claim of prosecutorial misconduct.

To prevail on a claim of prosecutorial misconduct, the defendant must prove that the prosecutor's comments were improper and prejudicial. State v. Yates, 161 Wn.2d 714, 774, 168 P.3d 359 (2007). "The burden to establish prejudice requires the defendant to prove that 'there is a substantial likelihood [that] the instances of misconduct affected the jury's verdict.'" State v. Thorgerson, 172 Wn.2d 438, 442-43, 258 P.3d 43 (2011) (quoting State v. Magers, 164 Wn.2d 174, 191, 189 P.3d 126 (2008)).

Failure to object to a prosecuting attorney's improper remark constitutes a waiver of the error unless the remark is so flagrant and ill-intentioned that the resulting prejudice could not have been neutralized by a curative instruction. State v. Elmore, 139 Wn.2d 250, 292, 985 P.2d 289 (1999). "Any allegedly improper statements should be viewed within the context of the prosecutor's entire argument, the issues in the case, the evidence discussed in the argument, and the jury instructions." State v. Dhaliwal, 150 Wn.2d 559, 578, 79 P.3d 432 (2003).

During closing argument, the prosecutor told the jury, "Now, the defendant carries the presumption of innocence in this case and that presumption continues until you go back to the jury room." Thomas contends the prosecutor's statement denied him a fair trial by suggesting to the jury that the presumption of innocence "evaporates" once deliberation begins.

Indeed, the prosecutor's statement that the presumption of innocence "continues until you go back to the jury room" misstated the law. See State v. Reed, 168 Wn. App. 553, 578, 278 P.3d 203 (2012); State v. Evans, 163 Wn. App. 635, 643, 260 P.3d 934 (2011); State v. Venegas, 155 Wn. App. 507, 524-25, 228 P.3d 813 (2010). Rather than ending at the jury room door, "The presumption of innocence continues throughout the entire trial and may be overcome, if at all, only during deliberations." Evans, 163 Wn. App. at 643. Any statement that invites the jury to disregard the presumption upon deliberation "seriously dilutes the State's burden of proof." Evans, 163 Wn. App. at 644.

To the extent that the prosecutor's comment suggested the presumption of innocence continued only until the jurors began deliberations, it constituted an improper remark. However, because Thomas did not object to this statement during trial, he has waived the error "unless the remark is so flagrant and ill intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury." State v. Russell, 125 Wn.2d 24, 86, 882 P.2d 747 (1994).

Thomas argues the misconduct incurably prejudiced him because the prosecutor urged the jurors to treat Thomas's out-of-court statements as any other witness statement, requiring temporary coexistence with the presumption of innocence. According to Thomas, the prosecutor's argument suggested the jurors cast aside the presumption of innocence. While the statement suggested that jurors could disregard the presumption of innocence upon deliberation, this

19

court recently addressed a similar statement and found a curative instruction would have neutralized any resulting prejudice. See Reed, 168 Wn. App. at 579.

In Reed, the prosecutor stated "the presumption of innocence 'does last all the way until you walk into that [jury] room and start deliberating.'" 168 Wn. App. at 578. Reed did not object to this statement during trial. Reed, 168 Wn. App. at 578. There, as here, the statement amounted to an incorrect statement of the law by suggesting the presumption of innocence dissipated at the beginning of deliberations. Reed, 168 Wn. App. at 578. The court concluded the defendant failed to demonstrate enduring prejudice: "We have no doubt that a simple instruction from the trial court indicating that the presumption of innocence may be overcome, if at all, only *during* the jury's deliberations would have been sufficient to overcome any prejudice resulting from the prosecutor's remark." Reed, 168 Wn. App. 579.

Given the similarity of the statements, the Reed court's conclusion holds equally true for the case at hand. Had Thomas objected to the prosecutor's statements, the court could have issued an instruction to correct the misstatement of the law and remind the jury that the presumption of innocence persisted until the State proved the charged crime beyond a reasonable doubt. See Evans, 163 Wn. App. at 642-43. As a result, Thomas fails to establish the prosecutor's error as so flagrant and ill-intentioned that a curative instruction could not neutralize the resulting prejudice and cannot prevail on his claim of prosecutorial misconduct.

D. Community Custody Conditions

Thomas appeals the imposition of certain community custody prohibitions. Specifically, Thomas alleges (1) the community custody condition prohibiting him from entering sex-related businesses is not crime-related; and (2) the conditions prohibiting possession of sexually explicit materials and requiring that he inform the community custody officer (CCO) and treatment provider of any dating relationship are unconstitutionally vague. The State contends the trial court properly exercised its discretion in imposing these conditions. Because State v. Nguyen, 191 Wn.2d 671, 425 P.3d 847 (2018) recently upheld these community custody conditions against the same claims, the trial court properly imposed the conditions.

1. Crime-Related Prohibition

Here, the court imposed a community custody condition prohibiting Thomas from "enter[ing] sex-related businesses, including: x-rated movies, adult bookstores, strip clubs, and any location where the primary source of business is related to sexually explicit material." Thomas contends this prohibition is not crime related and amounts to an abuse of the court's discretion. Nguyen says otherwise.

As a condition of community custody, a sentencing court has the discretion to impose "crime-related prohibitions," proscribing "conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.703(3)(f); RCW 9.94A.030(10). "The prohibited conduct need not be identical to the crime of conviction, but there must be 'some basis for

the connection.'" Nguyen, 191 Wn.2d at 684 (quoting State v. Irwin, 191 Wn. App. 644, 657, 364 P.3d 830 (2015)).

An appellate court reviews community custody conditions for an abuse of discretion. Nguyen, 191 Wn.2d at 678. A court does not abuse its discretion if a reasonable relationship exists between the community custody condition and the crime of conviction. Nguyen, 191 Wn.2d at 684. "So long as it is reasonable to conclude that there is a sufficient connection between the prohibition and the crime of conviction, we will not disturb the sentencing court's community custody conditions." Nguyen, 191 Wn.2d at 685-86.

Thomas was convicted of two counts of voyeurism. Voyeurism is a sex offense involving viewing, photographing, or filming without consent for the purposes of arousal or gratification of sexual desire. Former RCW 9A.44.115(2). Commission of a sex offense establishes an inability to control sexual urges. Nguyen, 191 Wn.2d at 686. Therefore, "[i]t is both logical and reasonable to conclude that a convicted person who cannot suppress sexual urges should be prohibited from accessing 'sexually explicit materials,' the only purpose of which is to invoke sexual stimulation." Nguyen, 191 Wn.2d at 686. As a result, the trial court did not abuse its discretion in limiting Thomas's access to sexually explicit materials by prohibiting entrance to sex-related businesses.

2. Vagueness Challenge

Thomas argues unconstitutional vagueness as to the community custody provisions requiring him to inform the CCO and treatment provider of any dating

22

relationship and prohibiting him from possessing or viewing sexually explicit material. Based on Nguyen, we disagree.

The Fourteenth Amendment to the United States Constitution and article I, section 3 of the Washington State Constitution require fair warning of proscribed conduct. State v. Bahl, 164 Wn.2d 739, 752, 193 P.3d 678 (2008). A community custody provision suffers from vagueness if it does not define the criminal offense with sufficient definiteness such that ordinary people can understand the conduct proscribed, or does not provide ascertainable standards of guilt. Nguyen, 191 Wn.2d at 678. In Nguyen, the Washington State Supreme Court explicitly concluded that the two provisions appealed here—the requirement of informing the CCO and treatment provider of any dating relationship and prohibition against sexually explicit material—were not unconstitutionally vague. 191 Wn.2d at 681-83. Therefore, the sentencing court did not abuse its discretion by imposing these community custody conditions.

We affirm.

_____
Chun, J.

WE CONCUR:


_____
Mann, ACJ.

_____
Appelwick, CJ

23