## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57671-6-II |
| Respondent, | |
| v. | |
| MICHAEL WAYNE PICKERING, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, P.J. — Michael W. Pickering appeals his convictions on two counts of possession of a stolen firearm and two counts of second degree unlawful possession of a firearm, arguing that the trial court erred by denying his CrR 3.6 motion to suppress evidence seized pursuant to an allegedly overbroad search warrant. Pickering also challenges the imposition of the crime victim penalty assessment (CVPA) on his judgment and sentence. The State agrees that the CVPA should be stricken.

Given the circumstances and underlying offenses, the search warrant was sufficiently particular; thus, the trial court did not err by denying Pickering's motion to suppress. We affirm Pickering's convictions. However, we reverse the CVPA and remand to the trial court with instructions to strike the CVPA from Pickering's judgment and sentence.

No. 57671-6-II

FACTS

A.    INITIAL INVESTIGATION

On June 8, 2022, a Hoquiam police officer investigated a burglary. The reporting party explained that "his residence had been broken into and several firearms were stolen." Clerk's Paper's (CP) at 130. Included in the stolen firearms were a "Ruger M77 MK2 300 Win Mag" and a "Savage 243." CP at 130.

On June 28, a Grays Harbor police officer went to investigate a residential burglary. The officer spoke with Denny Waterbury, who reported that his home had been burglarized and several firearms were taken.

On July 2, Officer Ed Welter contacted Waterbury and learned that Waterbury's friends had recovered one of the stolen firearms and returned it to Waterbury. Waterbury told Officer Welter that when he went to pick up his firearm, he met the man it had been recovered from. That man told Waterbury that he had bought the firearm from Kevin Stoken, and that Stoken had "several [other] firearms in [his] vehicle." CP at 100.

Later that day, Officer Welter saw a vehicle that matched the description of Stoken's vehicle. Officer Welter approached the vehicle and recognized Stoken sitting in it. After confirming that Stoken had an outstanding warrant, Officer Welter arrested Stoken. Stoken told Officer Welter that an associate had stolen the firearms from Waterbury and asked Stoken to sell them. Officer Welter asked Stoken where the other firearms were, and Stoken explained that he sold a firearm to David Murray-Pickering.

2

Officer Welter asked Stoken about the sale of a firearm to David.[1] Stoken explained that after receiving the stolen firearms, he arranged to meet David at the home of Todd and Michael Pickering. It was there that Stoken sold David one of the stolen firearms. Officer Welter asked Stoken whether he had seen other guns in the home, and Stoken said "he had seen . . . Pickering with a .308, a .243 and a .257." CP at 104. Stoken also said that Pickering "admitted to obtaining the firearms in a residential burglary approximately 2-3 weeks prior." CP at 104. When Stoken was asked specifically about the June 8 burglary in Hoquiam, "Stoken confirmed again that [Pickering] told him [Pickering] had committed the burglary." CP at 105. Officer Welter confirmed that the calibers of the rifles Stoken saw in Pickering's possession were "consistent" with those from the Hoquiam burglary. CP at 105.

Officer Welter asked Stoken if Pickering, Todd, or David stored firearms in the residence and if so, the basis of Stoken's knowledge. Stoken responded, "'[Y]es there's guns in the house. How do I know, because they hunt.'" CP at 104. Stoken also reported seeing a firearm in Todd's room, explaining that he was confident in his description of the firearm because Pickering "had told [Stoken] about it and he had discussed obtaining ammo for [it]." CP at 105. Finally, Stoken reported that the firearm he sold to David "was sitting on the floor when" Stoken left the residence. CP at 105.

---

[1] Multiple persons involved in this case have "Pickering" in their surname. Todd Pickering is the brother of the appellant, Michael Pickering. David Murray-Pickering is Michael Pickering's nephew. To avoid confusion, we refer to Todd and David by their first names and to the appellant by his last name. We mean no disrespect.

After speaking with Stoken, Officer Welter confirmed that Pickering, Todd, and David all had prior felony convictions and that there was no record of any of them having had their firearm rights restored.

B.    SEARCH WARRANT

Officer Welter applied for a search warrant on July 3. In the search warrant application, Officer Welter stated that he had probable cause to believe Pickering, Todd, and David had all committed the crime of "Unlawful Possession of a Firearm, RCW 9.41.040." CP at 26. The search warrant application and supporting affidavit included the information discussed above.

The same day, Officer Welter obtained a search warrant for Pickering and Todd's residence, authorizing a search for:

> evidence of the [crime of Unlawful Possession of a Firearm], including:
> - Rifles chambered in .243 caliber, .257 caliber, .308 or .300 caliber a 17HMR hunting rifle and a AR Style Shot gun.
> - Any and all firearms
> - Evidence of dominion and control of the place searched including mail, receipts, identification, bills, rental agreements, licensing documents and other personal property whose owner/possessor may be readily determined.

CP at 47.

Law enforcement executed the search warrant the same day. Two rifles were found in Pickering's room: a "Ruger M77 300 Win Mag . . . w/ scope" and a "Savage Axis 223 . . . w/scope." CP at 44. The search also uncovered firearm-related paraphernalia including ammunition, magazines, and a firearm cleaning kit. Law enforcement also recovered "[i]ndicia for Michael Pickering." CP at 44.

No. 57671-6-II

The State charged Pickering with two counts of possession of a stolen firearm (counts 1 and 2), two counts of first degree unlawful possession of a firearm (counts 3 and 4), and two counts of second degree unlawful possession of a firearm (counts 5 and 6).

C.    MOTION TO SUPPRESS

Pursuant to CrR 3.6, Pickering moved to suppress the evidence obtained pursuant to the search warrant. Pickering argued that the search warrant was not particular enough because law enforcement had a written report from the Hoquiam theft and, thus, could have described the firearms to be seized with more particularly, but they failed to do so. The State responded that there was a clear connection between the alleged crime of unlawful possession of a firearm and the evidence sought. The trial court denied Pickering's motion and entered written findings of fact and conclusions of law. The following findings and conclusion pertain to this appeal:

FINDINGS OF FACT

. . . .

No. 13.
The Court held that the Defense argument that the level of description of the firearms listed in the warrant was not specific enough was hyper technical.

No. 14.
Specificity was not an issue and was met because of the nature of the charges being Unlawful Possession of a Firearm and the warrant asked to look for firearms.

. . . .

CONCLUSIONS OF LAW

. . . .

No. 5.

5

A ["]description is valid if it is as specific as the circumstances and the nature of the activity, or crime, under investigation permits." [*State v.*] *Perrone*, 119 W[n].2d [538,] 547, 834 P.2d 611 [1992]; *State v. Riley*, 121 W[n].2d 22, 27-28, 846 P.2d 1365 (1993).

CP at 180-83 (boldface omitted).

D.    STIPULATED FACTS TRIAL AND SENTENCING

The case proceeded to a stipulated facts trial on October 13. The trial court found Pickering guilty on both counts of possession of a stolen firearm (counts 1 and 2) and both counts of second degree unlawful possession of a firearm (counts 5 and 6).[2]

Following trial, Pickering requested, and the trial court granted, a prison-based Drug Offender Sentencing Alternative (DOSA). Under the prison-based DOSA sentence, Pickering was ordered to serve 69.75 months of total confinement and then 69.75 months in community custody.[3] The trial court also imposed the $500 CVPA after finding Pickering indigent because he "receives public assistance" and "receives an annual income, after taxes, of 125 percent or less of the current federal poverty level." CP at 368.

Pickering appeals.

---

[2] Prior to trial, the State moved to dismiss the two counts of first degree unlawful possession of a firearm (counts 3 and 4), which the trial court granted with prejudice.

[3] Following sentencing, the Department of Corrections filed, and this court granted, a postsentence review of Pickering's prison-based DOSA; Pickering attached a copy of the order granting the petition to his opening brief. This court's May 3, 2023 order explains that the trial court miscalculated Pickering's term of confinement and the trial court "should have imposed 42 months each of total confinement and community custody on counts 1 and 2 and 27.75 months each of total confinement and community custody on counts 5 and 6 under RCW 9.94A.662." Br. of Appellant, App. A at 2 . While "[t]otal confinement and total community custody would remain at 69.75 months," we remanded to the trial court with instructions to correct Pickering's judgment and sentence consistent with the May 3 order. Br. of Appellant, App. A at 2.

ANALYSIS

A.    SEARCH WARRANT

      1.    Legal Principles

Under the federal constitution, a search warrant must describe "the place to be searched, and the persons or things to be seized" with particularity. U.S. CONST. amend. IV. Our state constitution requires a particular description of the items to be seized.[4] *State v. Martines*, 184 Wn.2d 83, 92-93, 355 P.3d 1111 (2015). The particularity requirement protects individuals from general searches and "the danger of unlimited discretion in the executing officer's determination of what to seize." *Perrone*, 119 Wn.2d at 546; *see also State v. Askham*, 120 Wn. App. 872, 878, 86 P.3d 1224 ("The purpose of the particularity requirement is to prevent the State from engaging in unrestricted 'exploratory rummaging in a person's belongings' for any evidence of any crime." (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971))), *review denied*, 152 Wn.2d 1032 (2004).

---

[4] In his brief, Pickering relies on *State v. Hinton*, 179 Wn.2d 862, 868, 319 P.3d 9 (2014), to argue that "'[i]t is well-established that article I, section 7 is qualitatively different from the Fourth Amendment and provides greater protections.'" Br. of Appellant at 10 (quoting *Hinton*, 179 Wn.2d at 868). However, in *Hinton*, our Supreme Court addressed whether law enforcement conducted an impermissible search by reading the defendant's text messages *without* a search warrant. 179 Wn.2d at 865-66. Because no warrant issued, there was no particularity issue for the court to address in *Hinton*. Thus, *Hinton* does not support Pickering's argument that the particularity requirement under our state constitution is different from the requirement imposed by the U.S. Constitution.

To the extent Pickering argues that article I, section 7 of the Washington Constitution requires more exacting particularity than the Fourth Amendment of the U.S. Constitution, he fails to cite any applicable case supporting that proposition, and this court need not address it. *See DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.").

The description of property in a warrant satisfies the particularity requirement if "'it is as specific as the circumstances and the nature of the activity under investigation permit.'" *State v. Vance*, 9 Wn. App. 2d 357, 363, 444 P.3d 1214 (2019) (quoting *Perrone*, 119 Wn.2d at 547), *review denied*, 194 Wn.2d 1016 (2020); *see also United States v. Blum*, 753 F.2d 999, 1001 (11th Cir. 1985). In assessing particularity, we determine "'whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not.'" *State v. Higgins*, 136 Wn. App. 87, 91, 147 P.3d 649 (2006) (internal quotation marks omitted) (quoting *United States v. Mann*, 389 F.3d 869, 878 (9th Cir. 2004), *cert. denied*, 544 U.S. 955 (2005)). We also assess "'whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued.'" *Id.* at 91-92 (internal quotation marks omitted) (quoting *Mann*, 839 F.3d at 878).

A less particular description may suffice "when a warrant authorizes the search for contraband or inherently illicit property." *State v. Chambers*, 88 Wn. App. 640, 644, 945 P.2d 1172 (1997); *see also United States v. Pulliam*, 748 F.3d 967, 972 (10th Cir. 2014) ("Since [the defendant] was a felon . . . any guns in his possession were contraband. No specific description of a gun was necessary."). Thus, if the person subjected to a search warrant has a felony conviction, the warrant authorizing law enforcement to search for any and all firearms is sufficiently particular because any firearms the person possesses are inherently contraband. *Pulliam*, 748 F.3d at 972.

CrR 3.6(b) requires the trial court to make written findings of fact and conclusions of law following a hearing on a motion to suppress. Here, the trial court held a CrR 3.6 hearing, and

8

Pickering assigns error to findings of fact 13 and 14 and conclusion of law 5, all of which found or concluded that the warrant was sufficiently particular.

Generally, we review challenged findings of fact to determine if they are supported by substantial evidence and review challenged conclusions of law de novo. *State v. Levy*, 156 Wn.2d 709, 733, 132 P.3d 1076 (2006). However, we review de novo whether a search warrant satisfies the particularity requirement. *State v. Reep*, 161 Wn.2d 808, 813, 167 P.3d 1156 (2007); *see also State v. Clark*, 143 Wn.2d 731, 753, 24 P.3d 1006 ("Whether a warrant meets the particularity requirement of the Fourth Amendment is reviewed de novo."), *cert. denied*, 543 U.S. 1000 (2001). Thus, here, we review de novo whether the challenged search warrant was sufficiently particular.

2.      Search Warrant Was Sufficiently Particular

Pickering argues that the search warrant was overbroad, violating his right to privacy under the state and U.S. constitutions. Specifically, Pickering contends that because law enforcement could have described the guns they sought with more particularity but instead sought "'any and all firearms,'" the warrant was "a forbidden 'general warrant' that permitted law enforcement to conduct an exploratory search of [Pickering's] house for weapons." Br. of Appellant at 18-19 (quoting CP at 47). We disagree.

Given the circumstances of the underlying crime, the search warrant's description of property to be seized fulfilled the purposes of the particularity requirement.[5] Because Pickering

---

[5] As Pickering acknowledges, because Officer Welter's declaration was not physically attached to the search warrant application, nor did the warrant incorporate Officer Welter's declaration by reference, the declaration is irrelevant to the particularity issue. *See Higgins*, 136 Wn. App. at 92 ("That the affidavit was attached to the warrant is irrelevant because the warrant did not incorporate the affidavit by reference."), *and Riley*, 121 Wn.2d at 29-30 (clarifying that an affidavit can cure an overbroad warrant only if it is both attached to the warrant and incorporated by

had prior felony convictions and he had not had his firearm rights restored, he was precluded from possessing *any* firearms.  The crime being investigated was unlawful possession of a firearm.  Thus, the broad category of "[a]ny and all firearms" is appropriate where, as here, any firearms Pickering possessed were inherently contraband due to his criminal history.  CP at 47; *Chambers*, 88 Wn. App. at 644.  Given the circumstances, the search warrant's reference to "[a]ny and all firearms" "prevent[ed] [an] exploratory search[]" by limiting the items to be seized to contraband and evidence of Pickering's "dominion and control" of the home.  CP at 47; *Martines*, 184 Wn.2d at 93.

The warrant also "protect[ed] against 'seizure of objects on the mistaken assumption that they fall within' the warrant" because the nature of the crime alleged allowed law enforcement to only seize firearms they found in the home.  *Martines*, 184 Wn.2d at 93.  It would not be "sensible to read the warrant in a way that stops short of obtaining" evidence of the crime alleged, and this court "'test[s] and interpret[s] [search warrants] in a commonsense, practical manner, rather than in a hypertechnical sense.'"  *Id.*; *State v. Besola*, 184 Wn.2d 605, 615, 359 P.3d 799 (2015) (quoting *Perrone*, 119 Wn.2d at 549).  Furthermore, the warrant "'set[] out objective standards by which executing officers c[ould] differentiate items subject to seizure from those which are not'" by citing the crime alleged.  *Higgins*, 136 Wn. App. at 91 (internal quotation marks omitted) (quoting *Mann*, 389 F.3d at 878).  Because of his criminal history, Pickering was precluded from possessing any firearms, and the search warrant was expressly limited to firearms and evidence of

reference).  Moreover, resort to Officer Welter's declaration is unnecessary because the search warrant at issue was sufficiently particular.

Pickering's dominion and control of the firearms; thus, the search warrant was sufficiently particular.

Pickering argues that the search warrant here is analogous to a warrant this court invalidated in *Higgins*. We disagree.

In *Higgins*, the search warrant authorized seizure of "'certain evidence of a crime, to-wit: Assault 2nd DV RCW 9A.36.021.'" 136 Wn. App. at 90 (internal quotation marks omitted) (quoting Record). *Higgins* held the search warrant was overbroad because RCW 9A.36.021 includes six ways to commit second degree assault; thus, the warrant authorized a search for evidence of crimes for which there was no probable cause. *Id.* at 91-94.

*Higgins* is distinguishable because assault and unlawful possession of a firearm are qualitatively different crimes. While there are several different ways to commit second degree assault, a person commits the crime of unlawful possession of a firearm "if the person owns, accesses, has in the person's custody, control, or possession, or receives any firearm after having previously been convicted . . . of any" felony. *Compare* RCW 9A.36.021 *with* RCW 9.41.040. In other words, the single action criminalized by RCW 9.41.040 is the possession of a firearm after having been convicted of a felony, whereas the second degree assault statute criminalizes several different actions and defines them all as the same crime. RCW 9A.36.021. The only difference between first degree and second degree unlawful possession of a firearm (RCW 9.41.040(1) and (2)) is the degree of the crime, which turns on a defendant's criminal history; both require a felony conviction. Thus, unlike in *Higgins*, there was no need to "differentiate between items subject to seizure and those that were not" because Pickering's criminal history made *any* firearm in his possession subject to seizure. 136 Wn. App. at 93.

11

Pickering also argues that because law enforcement had a report detailing the guns Pickering allegedly stole in Hoquiam but did not include all of those descriptions in the warrant, the search warrant must be invalidated. In *Perrone*, our Supreme Court explained:

> [W]here most search warrants are concerned, a description is valid if it is as specific as the circumstances and the nature of the activity under investigation permit. Accordingly, the use of a generic term or a general description is not per se a violation of the particularity requirement. Rather, where the precise identity of goods cannot be determined when the warrant is issued, a generic or general description may be sufficient, if probable cause is shown and a more specific description is impossible.

119 Wn.2d at 547 (internal citations omitted).

Pickering misconstrues *Perrone*'s holding. The *Perrone* court acknowledged that other "courts have reasoned that the use of a generic term or general description is constitutionally acceptable only when a more particular description of the items to be seized is not available at the time the warrant issues." *Id.* However, *Perrone* did not require that if a more particular description of items to be seized is available, that more particular description must be used in the warrant.

The record shows that Officer Welter was aware of the Hoquiam burglary, the guns stolen in that burglary, and Pickering's alleged involvement in that burglary when Officer Welter applied for the search warrant. However, when Officer Welter applied for the search warrant, based on Stoken's statements, Officer Welter had probable cause to believe that there were other firearms in addition to those stolen in the Hoquiam burglary being kept in Pickering and Todd's home. And

because of Pickering's criminal history, any firearms in the home[6] would constitute evidence of the crime of unlawful possession of a firearm.

Pickering's argument rests on a "'hypertechnical'" testing of the search warrant, and we interpret warrants "'in a commonsense, practical manner.'" *Besola*, 184 Wn.2d at 615 (quoting *Perrone*, 119 Wn.2d at 549). Here, had law enforcement only included the firearm descriptions they had from the Hoquiam burglary, they may well have been precluded from seizing any other firearms they might have discovered in executing the search warrant—firearms that Pickering was legally precluded from possessing due to his criminal history. Because the search warrant described the items to be seized "as specific[ally] as the circumstances and the nature of the activity under investigation permit[ted]," the search warrant was not overbroad. *Perrone*, 119 Wn.2d at 547.

B. CVPA

Pickering argues, and the State concedes, that the CVPA should be stricken from Pickering's judgment and sentence. We accept the State's concession.

---

[6] Possession may be actual or constructive. The State may establish constructive possession by showing the defendant had dominion and control over the firearm. . . .

Courts have found sufficient evidence of constructive possession, and dominion and control, in cases in which the defendant was . . . the owner of the premises . . . where contraband was found.

*State v. Chouinard*, 169 Wn. App. 895, 899-900, 282 P.3d 117 (2012) (internal citations omitted), *review denied*, 176 Wn.2d 1003 (2013). The owners of the home searched were Todd and Michael Pickering.

No. 57671-6-II

Effective July 1, 2023, RCW 7.68.035(4) prohibits courts from imposing the CVPA on indigent defendants. *See State v. Ellis*, 27 Wn. App. 2d 1, 16, 530 P.3d 1048, *pet. for review filed*, No. 102378-2 (Sep. 14, 2023). Although this amendment took effect after Pickering's sentencing, it applies to cases pending on appeal. *Id.*

The CVPA is no longer authorized for defendants who are indigent as defined in RCW 10.01.160(3)(a)-(c). RCW 7.68.035(4). A person is indigent under RCW 10.101.010(3)(a) if they receive certain "types of public assistance." A person is indigent under RCW 10.101.010(3)(c) if they "[r]eceive an annual income, after taxes, of one hundred twenty-five percent or less of the current federally established poverty level."

Here, the trial court determined that Pickering was indigent both because he "receives public assistance" and because he "receives an annual income, after taxes, of 125 percent or less of the current federal poverty level." CP at 368. Thus, the CVPA is no longer authorized for Pickering. Because the CVPA is no longer statutorily authorized, and Pickering is indigent, we reverse the imposition of the CVPA and remand with instructions to strike the CVPA from Pickering's judgment and sentence.[7]

---

[7] In his opening brief, Pickering also asks that we "remand[] to the trial court for correction of the judgment and sentence pursuant to this Court's order of May 3, 2023, in cause no. 57912-0-II." Br. of Appellant at 23. However, as noted above, we already remanded the judgment and sentence for correction in accordance with the May 3 order. To the extent the May 3 order has not yet been executed, on remand, the trial court should correct the judgment and sentence consistent with this opinion and this court's May 3 order.

No. 57671-6-II

## CONCLUSION

The search warrant was sufficiently particular. Therefore, we affirm Pickering's convictions. However, we reverse the CVPA and remand to the trial court with instructions to strike the CVPA from Pickering's judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, P.J.

We concur:

Glasgow, J.

Che, J.